# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT PIERCE DIVISION

### CASE NO. 14-CV-14360-MIDDLEBROOKS/LYNCH
### IN ADMIRALTY

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| SUNCOAST SHIPPING, LLC | ) ) |
| Defendant. | ) ) |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

DUANE MORRIS LLP
A Delaware Limited Liability Partnership
One Riverfront Plaza
1037 Raymond Boulevard, Suite 1800
Newark, NJ 07102-5429
973.424.2000
James W. Carbin (*pro hac vice*)
P. Ryan McElduff
*Attorneys for Plaintiff*
Travelers Property Casualty
Company of America

DUANE MORRIS LLP
A Delaware Limited Liability Partnership
200 S. Biscayne Boulevard, Suite 3400
Miami, Florida 33131
305.960.2200
Felice K. Schonfeld, Esq.
Florida Bar No. 266523
Harvey W. Gurland, Jr., P.A.
Florida Bar No. 284033

DM1\5292391.2

**TABLE OF CONTENTS**

<b>PAGE</b>

ARGUMENT ...........................................................................................................................2

        POINT I        SUMMARY JUDGMENT IS APPROPRIATE ..........................................2

        POINT II      THE POLICY IS MARINE INSURANCE GOVERNED BY
                        ESTABLISHED FEDERAL ADMIRALTY LAW ......................................3

        POINT III     SUNCOAST BREACHED ITS DUTY OF *UBERRIMAE FIDEI* ...............3

        POINT IV     SUNCOAST DID NOT DISCLOSE THE TRUE OWNERSHIP................6

        POINT V      SUNCOAST INTENTIONALLY MISLED TRAVELERS AS TO
                        THE TUG OWNERSHIP.........................................................................10

        POINT VI     SUNCOAST MISREPRESENTED/CONCEALED THAT SAFCO
                        IS UNINSURABLE ..................................................................................13

CONCLUSION.....................................................................................................................14

## TABLE OF AUTHORITIES

**Federal Cases**

*All Underwriters v. Weisberg*, 222 F.3d 1309 (11th Cir. 2000) ........................................................3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................................2

*Celotex Corp. v. Carrett*, 477 U.S. 317 (1986)..............................................................................2

*Certain Underwriters at Lloyd's, London v. Giroire*, 27 F. Supp. 2d 1306 (S.D. Fl. 1998) ....... 3-4

*Chiariello v. ING Groep NV*, 2006 AMC 2135 (N.D. Ca. 2006) ....................................................12

*Cigna Property & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412 (9th Cir. 1998) .......8, 12

*E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986) ......................................3

*El Fenix de Puerto Rico v. Gutierrez*, 786 F. Supp. 1065, 1069 (D.P.R. 1991) ...........................10

*Grande v. St. Paul Fire & Marine Ins. Co.*, 2006 AMC 519 (1st Cir. 2006) ..................................8

*Great Lakes Reinsurance (UK) PLC v. Atl. Yacht & Marine Servs.*, 2008 WL 2277509,
2008 U.S. Dist. LEXIS 108231 (S.D. Fl. 2008) ........................................................................13

*Great Lakes Reinsurance (UK) PLC v. Morales*, 760 F.Supp.2d 1315 (S.D. Fl. 2010)........2, 8, 12

*Great Lakes Reinsurance (UK) PLC v. Rosin*, 757 F.Supp. 2d 1244 (S.D. Fl. 2010) ....................3

*Great Lakes Reinsurance PLC v. Arbos*, 2009 AMC 334; 2008 U.S. Dist. LEXIS 109472
(S.D. Fl. 2008) ...........................................................................................................................12

*Griffith v. American Nat. Fire Ins. Co.*, 1997 AMC 2745 (D. De. 1996).......................................8

*HIH Marine Services, Inc. v. Fraser*, 211 F.3d 1359 (11th Cir. 2000) ..................................... 2-4

*Kerr v. Union Marine Ins. Co.*, 130 F. 415 (2d Cir. 1904)............................................................13

*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 1987 AMC 1 (2d Cir. 1986), *cert. denied* 480
U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)...................................................................2, 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).....................................2

*Morewitz v. West of England Ship Owners Mut. Protection And Indemnity Assoc.*, 896
F.2d 495 (11th Cir. 1990) ...........................................................................................................3

*Northfield Ins. Co. v. Barlow*, 983 F. Supp. 1376 (N.D. Fl. 1997)................................................2

DM1\5292391.2

*St. Paul Fire and Marine Ins. Co. v. Halifax Trawlers, Inc.*, 495 F. Supp. 2d 232 (D. Ma. 2007) ..................................................................................................................13

*St. Paul Fire and Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1184 (11th Cir. 2009) .....................................................................................................................3

*Sun Mutual Insurance Company v. Ocean Insurance Co.*, 107 U.S. 485; 1 S. Ct. 582; 27 L.Ed. 337 (1883) ...................................................................................................5

*Underwriters at Lloyd's v. Montford,* 52 F.3d 219 (9th Cir. 1995).................................12

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955) ...............................3

## Federal Statutes and Rules of Court

Fed. R. Civ. P. 56.............................................................................................................13

Fed. R. Civ. P. 56(c) ..........................................................................................................2

Fed. R. Civ. P. 56(e) ..........................................................................................................2

## Other Authorities

Buglass, Leslie J., *Marine Insurance and General Average in the United States* (3d Ed. 1991) ...................................................................................................................10

Parks. Alex L., *The Law and Practice of Marine Insurance and Average* (Cornell Maritime Press 1987)..................................................................................................11

Winter, William D., *Marine Insurance, Its Principles and Practice* (McGraw-Hill, 3d Ed. 1952) .....................................................................................................................9

DM1\5292391.2

The Travelers Marine Hull and Protection & Indemnity Insurance Policy issued to Suncoast Shipping, LLC is void *ab initio* due to Suncoast's violations of the Doctrine *uberrimae fidei strictissimi* or Utmost Good Faith.

Utmost Good Faith enables a marine underwriter to fully evaluate the risk he is asked to undertake and to make a fully informed decision before he agrees to bind coverage.  The duty of Utmost Good Faith mandates the insured to voluntarily disclose, independent of any request by the underwriter, all information material to the risk that the insurer is asked to cover.

Suncoast plainly violated the doctrine when it sought insurance for the Tug BILLY G in Suncoast's name because it knew that the actual owner of the Tug, Safco Shipping, was uninsurable.  Suncoast's principal testified that Safco had been refused coverage by several insurers, and could not get insurance because Safco had no experience operating or managing vessels.  Thus, Suncoast and Safco agreed to make the request insurance in Suncoast's name only without disclosing Suncoast was not the owner of the Tug, while concealing Safeco's ownership.  Suncoast's application only disclosed Suncoast's experience and Suncoast's loss history, as the owner, and made no reference to Safco whatsoever.  Suncoast's application also concealed that Safco, the actual owner, had been refused insurance by multiple insurers.

Safco's ownership of the Tug, its operational history, loss history and inability to obtain insurance, were all concealed.

Each of these non-disclosures and mis-representations violated of the Doctrine of Utmost Good Faith rendering the Policy void *ab initio*.

Alternatively, since Suncoast neither owned nor chartered the Tug, it had no insurable interest to be covered, and the insurance is a nullity.

DM1\5292391.2

## ARGUMENT

## POINT I

## SUMMARY JUDGMENT IS APPROPRIATE

Summary judgment is required "when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material facts and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Carrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323.

Once the moving party has satisfied its initial burden, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A party also cannot rely upon "[c]onclusory allegations" that raise no more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Summary judgment has been granted in cases involving breach of an insured's duty of *uberrimae fidei* rendering the policy void *ab initio*. *See e.g. HIH Marine Services, Inc. v. Fraser*, 211 F.3d 1359, 1364 (11th Cir. 2000); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 13, 1987 AMC 1 (2d Cir. 1986), *cert. denied* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Great Lakes Reinsurance (UK) PLC v. Morales*, 760 F.Supp.2d 1315, 1325-1326 (S.D. Fl. 2010) *and Northfield Ins. Co. v. Barlow*, 983 F. Supp. 1376 (N.D. Fl. 1997).

DM1\5292391.2

## POINT II

## THE POLICY IS MARINE INSURANCE GOVERNED BY ESTABLISHED
## FEDERAL ADMIRALTY LAW

The Travelers Policy provides traditional marine Hull and Protection & Indemnity (P&I)

insurance on the Tug BILLY G. Statement of Facts at ¶ 32-33, Exhibit 1, Policy and Exhibit 2,

Rouzier Dep. at p. 40:9-41:1.  Accordingly,

> [T]his case concerns a marine insurance policy issued for a vessel,
> thereby giving rise to federal admiralty jurisdiction. *See, e.g., St.
> Paul Fire and Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d
> 1181, 1184 (11th Cir. 2009); *All Underwriters v. Weisberg*, 222
> F.3d 1309, 1312 (11th Cir. 2000).

*Great Lakes Reinsurance (UK) PLC v. Rosin*, 757 F.Supp. 2d 1244, 1250 (S.D. Fl. 2010).  *See*

*also Morewitz v. West of England Ship Owners Mut. Protection And Indemnity Assoc.*, 896 F.2d

495, 499-500 (11th Cir. 1990).  (P&I Policy is marine insurance giving rise to admiralty

jurisdiction).

> With admiralty jurisdiction comes the application of substantive
> admiralty law.

*E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864-865 (1986).

Marine insurance policies are governed by established by Federal Admiralty law; in the

absence of a federal admiralty rule, relevant state law applies.  *Wilburn Boat Co. v. Fireman's*

*Fund Ins. Co.*, 348 U.S. 310, 313-14 (1955).  *See also Weisberg*, 222 F.3d at 1312 *and Certain*

*Underwriters at Lloyd's, London v. Giroire*, 27 F. Supp. 2d 1306, 1311 (S.D. Fl. 1998).

## POINT III

## SUNCOAST BREACHED ITS DUTY OF *UBERRIMAE FIDEI*

In *HIH Marine Services*, the Eleventh Circuit held:

> It is well-settled that the marine insurance doctrine of *uberrimae*
> *fidei* is the controlling law of this circuit.  *See Steelmet, Inc. v.*
> *Caribe Towing Corp.*, 747 F.2d 689, 695 (11th Cir. 1984); *Certain*

3

*Underwriters*, 27 F.Supp.2d at 1312; *International Ship Repair and Marine Serv., Inc. v. St. Paul Fire & Marine Ins. Co.*, 922 F.Supp. 577, 580 (M.D. Fl. 1996). *Uberrimae fidei* requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk. *See Steelmet*, 747 F.2d at 695; *see also Fireman's Fund Ins. Co. v. Wilburn Boat Co.*, 300 F.2d 631, 646 (5th Cir.1962) (discussing the duty to disclose in marine insurance law); G. Gilmore & C. Black, *The Law of Admiralty* 62 (2d ed. 1975) ("[T]he highest degree of good faith is exacted of those entering [a marine insurance contract], for the underwriter often has no practicable means of checking on either the accuracy or the sufficiency of the facts furnished him by the assured before the risk is accepted and the premium and conditions set."). The duty to disclose extends to those material facts not directly inquired into by the insurer. *See Jackson v. Leads Diamond Corp.*, 767 F. Supp. 268, 271 (S.D. Fl. 1991); *see also Cigna Property & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 420 (9th Cir. 1998) ("Whether or not asked, an applicant for marine insurance is bound to reveal every fact within his knowledge that is material to the risk.").

Under *uberrimae fidei*, a material misrepresentation on an application for marine insurance is grounds for voiding the policy. *See Steelmet*, 747 F.2d at 695 (a misrepresentation, even if it is a result of "mistake, accident, or forgetfulness, is attended with the rigorous consequences that the policy never attaches and is void" (*quoting Wilburn Boat Co.*, 300 F.2d at 646)). A misrepresentation is material if "it might have a bearing on the risk to be assumed by the insurer." *Northfield Ins. Co. v. Barlow*, 983 F.Supp. 1376, 1380 (N.D. Fl.1997); *see also Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d 940, 942-43 (11th Cir.1986) (materiality is "that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk").

*HIH Marine Svcs*, 211 F.3d at 1362-1363. *See also Giroire*, 27 F. Supp. 2d at 1311-1312.

The Second Circuit explained the Doctrine:

> [T]he materiality of the non-disclosure **does not depend on what an investigation would have revealed**. […] **Instead, the insurer should be afforded the opportunity to investigate prior to its acceptance of the risk.** Accordingly, the assured is required to communicate the information to the insurer before the policy is issued, so that the insurer can decide for itself at that time whether to accept the risk.

4

*Knight*, 804 F.2d at 13-14 (emphasis added).

> The assured will not be allowed to protect himself against the charge of an undue concealment by evidence that he had disclosed to the underwriters, in general terms, the information that he possessed.  Where his own information is specific, it must be communicated in the terms in which it was received.  General terms may include the truth, but may fail to convey it with its proper force and in all its extent.  Nor will the assured be permitted to urge, as an excuse for his omission to communicate material facts, that they were actually known to the underwriters, unless it appears that their knowledge was as particular and full as his own information**.  It is the duty of the assured to place the underwriter in the same situation as himself; to give to him the same means and opportunity of judging of the value of the risks; and when any circumstance is withheld, however slight and immaterial it may have seemed to himself, that, if disclosed, would probably have influenced the terms of the insurance, the concealment vitiates the policy**.

*Sun Mutual Insurance Company v. Ocean Insurance Co.*, 107 U.S. 485, 510-511; 1 S. Ct. 582;

27 L.Ed. 337 (1883) (emphasis added).

Suncoast breached its duty by:

> 1)      Not disclosing that the Tug BILLY G was owned by Safco, and not by Suncoast, and that Suncoast had no interest in the Tug;
>
> 2)      Representing that Suncoast was the only party with an interest in the tug;
>
> 3)      Using Suncoast's experience and loss history to obtain insurance for Safco; and
>
> 4)      Failing to disclose that Safco had repeatedly been refused insurance.

Each of these non-disclosures and/or misrepresentations was material to the risk Suncoast asked

Travelers to insure and separately warrant voiding the Policy.

5

## POINT IV

### SUNCOAST DID NOT DISCLOSE THE TRUE OWNERSHIP

Suncoast's principal, Jean Rouzier, readily testified that the Tug BILLY G was owned by

Safco, a Panamanian corporation controlled by Mr. Saul Faskha, and that Suncoast never owned

the Tug, and had no interest in it.  Statement of Facts at ¶ 3-5, 7-8, Exhibit 2, Rouzier Dep. at p.

9:17-9:20, 10:25-11:12, 25:22-26:9, 39:7-39:13, 50:19-50:21, 51:1-51:5.

Suncoast concedes that any proceeds paid under the Policy for the claimed loss of the

Tug would go to Safco.  Statement of Facts at ¶ 36, Exhibit 2, Rouzier Dep. at p. 70:6-70:13.

Mr. Rouzier testified that Suncoast and Safco agreed to use Suncoast's name to obtain

insurance:

> Q:    So the suggestion was that Suncoast's name be used to get
> the insurance on the tug instead of the actual owner [Safco]?
>
> A:    Right.
>
>             ***
>
> Q:    And was it agreed that the application for insurance for the
> Billy G would be made using Suncoast's name?
>
> A:    Yes.

Statement of Facts at ¶ 14, Exhibit 2, Rouzier Dep. at p. 34:12-34:15.

Mr. Rouzier explained Suncoast's name was used because Safco had no experience

managing or operating vessels.  Statement of Facts at ¶ 6, 13-15, Exhibit 2, Rouzier Dep. at p.

28:22-28:24, 34:9-34:15.

> Q:    So let's go back to the Tug Billy G.  You said Mr. Faskha
> had no experience with ship owning?
>
> A:    Zero.  That was his first time -- Mr. Faskha was even
> involved in construction.  That's what I understand. He never had
> any experience in tug.

Statement of Facts at ¶ 6, Exhibit 2, Rouzier Dep. at p. 30:3-30:8.

6

Suncoast knew that operational experience was critical to a marine insurer's assessment of the risk:

> Q:     And where did you learn that an insurance company wants to know that the vessel owner has experience?
>
> A:     From Mr. Toscani, the [broker]
>
> Q:     And when did you learn that?  Was that in connection with the Billy G?
>
> A:     With the Billy G.  No, no, I learn that a long time.  I knew that because I had insurance from many insurance companies, and the first question they ask you:  What is your experience?

Statement of Facts at ¶ 28, Exhibit 2, Rouzier Dep. at p. 30:9-30:18.

Suncoast also knew that if it disclosed Safco's ownership of the Tug, the underwriter would refuse to insure the Tug BILLY G:

> Mr. Faskha, he tried – that's what I understand – he tried anywhere; that he was not approved **because of no experience** in the business.
>
> ***
>
> They will never give him insurance, never, **because he had no experience**.

Statement of Facts at ¶ 14, Exhibit 2, Rouzier Dep. at p. 31:2-31:4, 35:3-35:4 (emphasis added).

Suncoast knew it had to conceal Safco's interest in the Tug:

> because [Safco] was not qualified as an owner to have insurance.

Statement of Facts at ¶ 31, Exhibit 2, Rouzier Dep. at p. 41:5-41:14.

Suncoast applied for insurance on the Tug from Travelers through its marine insurance broker, John Toscani of Frenkel & Co. (the "Submission"). Statement of Facts at ¶ 16-17, Exhibit 2, Rouzier Dep. at p. 29:20-30:2, 33:25-34:2, 51:17-52:11, 52:24-53:7, 55:18-55:25 and Exhibit 3, Submission.

7

DM1\5292391.2

> [T]he general rule in the context of marine insurance that a broker
> acts as agent for the insured.
>
> ***
>
> The insurer is not to blame if the broker erroneously prepares the
> application, because the insurer issues the policy based on the
> application.   **The insurer is entitled to rely on the
> representations of the insured's agent**.

*Morales*, 760 F.Supp. 2d at 1324 (S.D.Fl. 2010) (emphasis added), *citing Giroire*, 27 F. Supp. 2d

at 1313-1314.

The Submission included a Survey of the Tug that mis-represented that the Tug was

owned by Suncoast.  Statement of Facts at ¶ 23-24, Exhibit 3, Submission, p. 1 and Exhibit 4,

Survey at p. 4.  Safco was not mentioned anywhere in the Submission, nonetheless disclosed as

the owner, or that Safco had been rejected by multiple insurers. *Id.*

### Ownership is a Material Fact

> Ownership of the insured property is normally a material fact in an
> insurance contract; among other things, the owner is the main party
> with an insurable interest, **and the owner ordinarily has the
> primary incentive to safeguard the property** (which reduces the
> risk)

*Grande v. St. Paul Fire & Marine Ins. Co.*, 2006 AMC 519, 525 (1st Cir. 2006) (citations

omitted, emphasis added).  *See Morales,* 760 F. Supp. 2d at 1325-1326 (misrepresentation of

identity of vessel owner material and renders the policy void).  S*ee also Polaris Pictures Corp.*,

159 F.3d at 420 (failure to disclose individual's ownership interest in vessel was material and

voided the policy); *Griffith v. American Nat. Fire Ins. Co.*, 1997 AMC 2745, 2755 (D. De. 1996)

(failure to disclose that vessel was owned by a corporation, not individual identified in

application, was material and rendered policy void).

The materiality of the owner of a vessel is patent:

DM1\5292391.2

>The character of the owner and experience and ability of the manager of a single vessel or a fleet are primary considerations in the insurance of hulls.  Bad ownership or incompetent management means many losses, some of which may present evidence of unfair dealing.  No asset is so valuable to a shipowner as his reputation.  A good record will procure insurance on vessels that, because of their age for instance would be otherwise uninsurable.  On the other hand a bad record in the owning and management of vessels that are in themselves good risks will make the procurement of insurance a difficult matter.  Not only does bad management make difficult the procurement of insurance on the hull, but it also affects the placing of insurance on the cargo and freight.  Ownership and management affect not only the occurrence of ·accidents to vessels through errors of judgment in navigation, owing to the employment of incompetent masters and crew, but also the physical upkeep of the vessel.  A run-down vessel is a bad insurance risk and also a bad financial risk.  A steamer with its delicate motive power cannot be neglected.  A wooden sailing vessel cannot be neglected or its hull and rigging will deteriorate.  Vessels need constant attention, and if, through mismanagement, an owner neglects the upkeep of his vessels, his loss record will soon reveal the fact, even if it is not otherwise discovered by the underwriters.  High rates or no insurance at all will be the inevitable result.

Winter, William D., *Marine Insurance, Its Principles and Practice*, p. 263-264 (McGraw-Hill,

3d Ed. 1952).

### The Terms of the Policy Confirms Ownership is a Material Fact

The Policy confirms the materiality of the owner of the vessel.  The Policy contains a

Change of Ownership clause that terminates coverage if ownership changes:

>**CHANGE OF OWNERSHIP**
>
>**In the event of any change, voluntary or otherwise, in the ownership** or flag **of the Vessel**, or if the Vessel be placed under new management, or be chartered on a bareboat basis or requisitioned on that basis, or if the Classification Society of the Vessel or her class therein be changed, cancelled or withdrawn, then, unless Underwriters agree thereto in writing, **this Policy shall automatically terminate at the time of such change in ownership**, flag, management, charter, requisition or classification; provided, however, that in the event of an involuntary temporary transfer by requisition or otherwise, without

the prior execution of a written agreement by the Assured, such automatic termination shall occur fifteen days after such transfer. […]

Statement of Facts at ¶ 34, Exhibit 1, Policy, p. 25 of 69.  (emphasis added).

> **The clause** speaks for itself and **is indicative of the importance underwriters place** on the quality of the management of the vessel insured.

Buglass, Leslie J., *Marine Insurance and General Average in the United States*, p. 33 (3d Ed. 1991) (emphasis added).

Suncoast admits it did not disclose Safco's ownership and also mis-represented that it owned the Tug BILLY G.  Both the non-disclosure and the mis-representation each violated its duty of utmost good faith and rendered the Policy voidable.

Alternatively, since Suncoast neither owned nor chartered the Tug, it had no insurable interest to be covered, and the insurance is a nullity. *See El Fenix de Puerto Rico v. Gutierrez*, 786 F. Supp. 1065, 1069 (D.P.R. 1991).  Suncoast confirmed it had not insurable interest when Mr. Rouzier testified that any insurance proceeds would be paid to Safco. Statement of Facts at ¶ 36, Exhibit 2, Rouzier Dep. at p. 70:6-70:13.

## POINT V

## SUNCOAST INTENTIONALLY MISLED TRAVELERS AS TO THE TUG OWNERSHIP

Suncoast admitted that it intentionally misled Travelers by submitting its own experience and loss history to obtain insurance for Safco's operations.

Mr. Rouzier testified:

> Q:      And at that point Frenkel was authorized by [Safco] to go look for insurance in the market.
>
> A:      Yes, of course.

DM1\5292391.2

Q:      And Frenkel couldn't get insurance for the Billy G because of the lack of experience of [Safco].  Do I have that right?

A:      That's it. You got that right.

Q:      And then you had a discussion with Mr. Toscani at Frenkel.

A:      Yes.  Mr. Toscani told me I know you and if you apply, you get the insurance because you have a clean record.

Q:      So the suggestion was that Suncoast's name be used to get the insurance on the tug instead of the actual owner [Safco]?

A:      Right.

Statement of Facts at ¶ 14, 16, Exhibit 2, Rouzier Dep. at p. 33:25--34:15.

Suncoast knew operational experience and loss history were central to an insurer's assessment of a marine risk.  Statement of Facts at ¶ 28-29, Exhibit 2, Rouzier Dep. at p. 28:21-28:24, 30:9-30:18, 34:7-34:11.

Yet, Suncoast and Safco agreed to disclose only Suncoast's experience and loss history. Statement of Facts at ¶ 14-15, 30-31, Exhibit 2, Rouzier Dep. at p. 28:22-28:24, 34:9-34:15, 34:20-34:23.  *See also* Exhibit 3, Submission and Exhibit 4, Survey.

Specifically, the Application form Suncoast submitted to Travelers represented that Mr. Rouzier, Suncoast's principal, had operated vessels for thirty (30) years.  Statement of Facts at ¶ 20, Exhibit 3, Submission, p. 3.

The Submission also included a notarized statement that Suncoast had no losses in the prior five (5) years.  Statement of Facts at ¶ 19, Exhibit 3, Submission, p. 2 and Exhibit 2, Rouzier Dep. at p. 51:17-52:8.

The Application contained no mention whatsoever that the Tug was owned by Safco.

DM1\5292391.2

Safco's inability to obtain insurance in its own name itself demonstrates that operational

experience is a material fact.  *Morales,* 760 F. Supp. 2d at 1325-1326.  *See also Chiariello v.*

*ING Groep NV,* 2006 AMC 2135, 2145 (N.D. Ca. 2006) (applying New York law).

> [A]ny reasonable juror would also find that a prospective insured's
> lack of any previous boating or boat-owning experience is material
> to the insurer's decision regarding whether to accept the risk and on
> what terms.  A person with no boating experience is certainly more
> of an insurance risk than someone with significant boating
> experience; auto insurance companies charge new drivers higher
> premiums than more experienced drivers for this very reason.
> Applying the doctrine of *uberrimae fidei* to the undisputed facts of
> this case, the Court finds Defendants' material misrepresentations
> and/or non-disclosures of material facts void the Policy.

*Great Lakes Reinsurance PLC v. Arbos*, 2009 AMC 334; 2008 U.S. Dist. LEXIS 109472, *16-17

(S.D. Fl. 2008) (citations omitted).

Further,

> [i]t is only common sense that the loss experience of a shipowner
> is one of the major factors in rating a hull renewal.

Parks. Alex L., *The Law and Practice of Marine Insurance and Average*, p. 92 (Cornell Maritime

Press 1987).  *See Arbos*, 2008 U.S. Dist. LEXIS 109472, *15-16.  *See also Polaris Pictures*

*Corp.*, 159 F.3d at 420; *Underwriters at Lloyd's v. Montford,* 52 F.3d 219, 222 (9th Cir. 1995).

("An insurance applicant's loss history is a fact material to the risk").

Suncoast's false submission that it owned the Tug and substitution of its own experience

and loss history to obtain insurance for Safco's operation of the Tug BILLY G violated the duty

of utmost good faith and renders the Policy voidable.

12

## POINT VI

## SUNCOAST MISREPRESENTED/CONCEALED THAT SAFCO IS UNINSURABLE

The Application form Suncoast submitted to Travelers expressly asked:

> Has the applicant and/or affiliated companies been denied
> coverage or been subject to cancellation by Underwriters?

Suncoast responded "NO".

Statement of Facts at ¶ 21, Exhibit 3, Submission, p. 3.

But, Suncoast admits that Safco had repeatedly been denied coverage. Statement of Facts

at ¶ 13, Exhibit 2, Rouzier Dep. at p. 28:8-28:11, 34:16-35:1.

> Where, as in the instant case, the application form directly and
> explicitly inquires into a particular subject…a presumption arises
> as to the materiality of that particular question.

*Great Lakes Reinsurance (UK) PLC v. Atl. Yacht & Marine Servs.*, 2008 WL 2277509, *3, 2008

U.S. Dist. LEXIS 108231, *6-7 (S.D. Fl. 2008) (*citing Pacific Insurance Co. v. Kent*, 120 F.

Supp.2d 1205 (C.D.Cal.2000)).  *See also Kerr v. Union Marine Ins. Co.*, 130 F. 415, 417 (2d Cir.

1904), *quoting* 1 *Parsons on Marine Insurance*, 413 *and St. Paul Fire and Marine Ins. Co. v.*

*Halifax Trawlers, Inc.*, 495 F. Supp. 2d 232, 240 (D. Ma. 2007).

The mis-representation that Safco had never been denied coverage violated the duty of

utmost good faith, rendering the Policy voidable.

13

## **CONCLUSION**

Travelers respectfully requests that judgment be entered pursuant to Fed. R. Civ. P. 56

declaring the Policy void *ab initio* due to Suncoast Shipping, LLC's breach of *uberrimae fidei*

and for such other and further relief the Court deems appropriate.


Dated: February 18, 2015                                 Respectfully submitted,

                                                         /s/ Felice K. Schonfeld
James W. Carbin, Esq.                                    Felice K. Schonfeld, Esq.
(admitted *pro hac vice)*                                Florida Bar No. 266523
JWCarbin@duanemorris.com                                 FKSchonfeld@duanemorris.com
P. Ryan McElduff, Esq.                                   Harvey W. Gurland, Jr., P.A.
(admitted *pro hac vice)*                                Florida Bar No. 284033
PRMcelduff@duanemorris.com                               HWGurland@duanemorris.com
**DUANE MORRIS LLP**                                     **DUANE MORRIS LLP**
One Riverfront Plaza                                     200 S. Biscayne Boulevard
1037 Raymond Boulevard                                   Suite 3400
Suite 1800                                               Miami, Florida 33131
Newark, New Jersey 07102-5429                            Tel: 305.960.2200
Tel: 973.424.2025                                        Fax: 305.960.2201
Fax: 973.556.1426                                        *Counsel for Plaintiff*
*Counsel for Plaintiff*

14

15

## CERTIFICATE OF SERVICE

I  HEREBY CERTIFY that a true and correct copy of the foregoing was served this 18th

day of February, 2015, via U.S. Mail on all counsel or parties of record on the attached Service

List.


/s/ Felice K. Schonfeld
Felice K. Schonfeld, Esq.

15

DM1\5292391.2

## <u>SERVICE LIST</u>

Suncoast Shipping, LLC
1401 N. US Highway 1
Fort Pierce, FL 34950


-and-

Suncoast Shipping, LLC
54-75 N.E. St. James Drive, #148
Port St. Lucie, FL 34983

16