# EXHIBIT 1

# EXHIBIT   1



## DISCLOSURE NOTICE
### TERRORISM RISK INSURANCE ACT OF 2002
### REJECTION OF OUR OFFER OF COVERAGE

You did not accept our offer of coverage for certified acts of terrorism, as defined in and certified under the Terrorism Risk Insurance Act of 2002. Therefore, this policy contains one or more exclusions that apply to certified acts of terrorism. Under the federal Terrorism Risk Insurance Program Reauthorization Act of 2007, the applicable definition of certified acts of terrorism no longer requires that the act of terrorism be committed on behalf of a foreign person or foreign interest. Therefore, each such exclusion is not limited to an act of terrorism committed on behalf of a foreign person or interest.

If you were not made aware of our offer of coverage for certified acts of terrorism, or believe that this notice was included in this policy in error, please notify your agent or broker immediately.

Name of Insured: SUNCOAST SHIPPING, LLC

Policy Number: ZOH-15N11069-13-ND

Effective Date: 02/06/13

Processing Date: 06/12/13  15:29  001

D0101 Rev. 1-08                                                    Page 1 of 1

TRAVELERS

**Policy Number**
ZOH-15N11069-13-ND

**Former Policy Number**
NEW

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA
A CAPITAL STOCK COMPANY HEREIN CALLED THE COMPANY

# DECLARATIONS

**NAME AND ADDRESS OF INSURED**
SUNCOAST SHIPPING, LLC
1909 SW SOUTH MACEDO BLVD
PORT ST LUCIE   FL 34984

**NAME AND ADDRESS OF AGENCY**
FRENKEL & COMPANY, LLC
101 HUDSON STREET
JERSEY CITY NJ 07302

BUSINESS DESCRIPTION:

[ ] INDIVIDUAL   [ ] PARTNERSHIP   [X] LIMITED LIABILITY COMPANY   [ ] CORPORATION   [ ] OTHER

| From: FEBRUARY 6, 2013 | To: FEBRUARY 6, 2014 | 12:01 A.M. Standard Time at your mailing address |
|---|---|---|

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.

| COVERAGE | PREMIUM |
|---|---|
| HULL AND MACHINERY | $47,500.00 |
| PROTECTION & INDEMNITY | $21,500.00 |
| | |
| TOTAL PREMIUM | $69,000.00 |

| SURCHARGE AND/OR SURTAX | AMOUNT |
|---|---|
| FLORIDA CAT FUND | $   897.00 |

PAY PLAN: [X] Annual   [ ] 2 Pay   [ ] 4 Pay   [ ] 10 Pay   [ ] OTHER

THE POLICY FORMS LIST SHOWS ALL THE FORMS INCLUDED WHEN THIS POLICY BEGINS.

LOSS, IF ANY, PAYABLE TO
ASSURED OR ORDER

IN WITNESS WHEREOF, the Company designated on the Declarations page has caused this Policy to be signed by its President and Secretary and countersigned on the Declarations page by a duly authorized representative of the Company.

*Wendy C. Skjerven*
Secretary

*Brian MacLean*
President

| FEBRUARY 6, 2013 | NEW YORK, NY | |
|---|---|---|
| Countersigned Date | Countersigned At | Authorized Representative |

OMGE0001 Rev. 1-12
© 2012 The Travelers Indemnity Company. All rights reserved.                     Page 1 of 2

© 2012 The Travelers Indemnity Company. All rights reserved.

# TRAVELERS

POLICY NUMBER: ZOH-15N11069-13-ND

EFFECTIVE DATE: 02/06/13

ISSUE DATE: 06/12/13

## LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

This listing shows the number of forms, schedules and endorsements by line of business.

| | |
|---|---|
| DO 10 1 01 08 | DISCLOSURE NOTICE TERRORISM RISK INSURANCE ACT OF 2002 REJECTION OF OUR OFFER OF COVERAGE |
| OM GE 00 01 01 12 | DECLARATIONS |
| IL T8 01 10 93 | FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS |
| OM GE 01 00 01 12 | AIMU CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, AND ELECTROMAGNETIC EXCLUSION CLAUSE |
| OM GE 01 01 03 03 | AIMU — EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE (3/1/03) |
| OM GE 01 03 07 05 | CANCELLATION CLAUSE |

OCEAN MARINE

| | |
|---|---|
| OM GE 01 08 10 06 | AIMU U.S.ECONOMIC AND TRADE SANCTIONS CLAUSE |
| OM OH 00 01 06 77 | AMERICAN INSTITUTE HULL CLAUSES (7) (6/2/77) |
| OM OH 00 04 08 76 | AMERICAN INSTITUTE TUG FORM (53R-1) |
| OM OH 01 05 09 59 | AMERICAN INSTITUTE S. R. & C. C. ENDORSEMENT (HULLS) (87B-46) (9/8/59) |
| OM OH 01 22 07 08 | SCHEDULE OF VESSELS |
| OM OH 01 23 07 05 | SERVICE OF SUIT CLAUSE |
| OM OH 01 39 02 76 | AMERICAN INSTITUTE DELIBERATE DAMAGE — POLLUTION HAZARD (HULL) (6Z-4) |
| OM PI 00 01 01 56 | PROTECTION AND INDEMNITY (SP-23) |
| OM PI 01 01 07 76 | AMERICAN INSTITUTE POLLUTION EXCLUSION CLAUSE (P&I) AND BUY BACK ENDORSEMENT A (25) (7/4/76) |
| OM PI 01 11 07 08 | CREW WARRANTY |
| OM PI 01 13 02 11 | PROTECTION & INDEMNITY & HULL COLLISION, AND/OR HULL COLLISION & TOWERS, COMBINED SINGLE LIMIT COVERAGE ENDORSEMENT |

IL T8 01 10 93

AIMU
CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, AND
ELECTROMAGNETIC EXCLUSION CLAUSE

(March 1, 2003)

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/12/13  15:29  001 |

OMGE0100 Rev. 1-12
© 2012 The Travelers Indemnity Company. All rights reserved.                    Page 1 of 1

AIMU
EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE
WITH U.S.A. ENDORSEMENT

(March 1, 2003)

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

1.   In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from

   1.1   ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

   1.2   the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

   1.3   any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

   1.4   the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter.  The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

RADIOACTIVE CONTAMINATION  EXCLUSION CLAUSE
(U.S.A. ENDORSEMENT)

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that

   if fire is an insured peril

   and

   where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

   and

   a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the Extended Radioactive Contamination Exclusion Clause March 1, 2003 any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective  Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | Processing Date 06/12/13  15:29  001 | |

OMGE0101 Ed. 3-03
© 2003 The Travelers Indemnity Company. All rights reserved.                                  Page 1 of 1

## CANCELLATION CLAUSE

This Policy may be canceled by the Assured by mailing to the Company written notice stating when thereafter such cancellation shall be effective.  This Policy may be canceled by the Company by mailing to the Assured at the address shown in this Policy written notice stating when not less than **thirty**          (30 ) days thereafter such cancellation may be effective.  The mailing of such notice as aforesaid shall be sufficient proof of notice, and the effective date of cancellation stated in the notice shall become the end of the Policy period.  Delivery of such written notice either by the Assured or by the Company shall be equivalent to mailing.

In event of non-payment of premium **thirty**          (30 ) days after attachment, or of any additional premium when due, this Policy may be canceled by the Underwriter upon ten          (10 ) days written notice sent to the Assured at his last known address or in care of the Broker who negotiated this Policy.  Such proportion of the premium, however, as shall have been earned up to the time of the cancellation shall be payable.  In the event of Total Loss of Vessel occurring prior to a cancellation or termination of this Policy full annual premium shall be considered earned.

If the Assured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure.  If the Company cancels earned premium shall be computed pro-rata.  Premium adjustment may be made at the time of cancellation is effected, and if not then made, shall be made as soon as possible after cancellation becomes effective.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/12/13  15:29  001 |

OMGE0103 Ed. 7-05
© 2005 The Travelers Indemnity Company. All rights reserved.                    Page 1 of 1

**AIMU U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE**

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/12/13  15:29  001 |

OMGE0108 Ed. 10-06
© 2006 The Travelers Indemnity Company. All rights reserved.                    Page 1 of 1

**American Institute Hull Clauses**
**(June 2, 1977)**

7

To be attached to and form a part of Policy No. ZOH-15N11069-13-ND
of the TRAVELERS PROPERTY CASUALTY CO. OF AMERICA

The terms and conditions of the following clauses are to be regarded as substituted for those of the policy form to which they are attached, the latter being hereby waived, except provisions required by law to be inserted in the Policy. All captions are inserted only for purposes of reference and shall not be used to interpret the clauses to which they apply.

**ASSURED**                                                                                              1
This Policy insures SUNCOAST SHIPPING, LLC                                                                2

hereinafter referred to as the Assured.   3
If claim is made under this Policy by anyone other than the Owner of the Vessel, such person shall not be entitled to recover to a greater extent    4
than would the Owner, had claim been made by the Owner as an Assured named in this Policy.                5
Underwriters waive any right of subrogation against affiliated, subsidiary or interrelated companies of the Assured, provided that such waiver shall    6
not apply in the event of a collision between the Vessel and any vessel owned, demise chartered or otherwise controlled by any of the aforesaid com-    7
panies, or with respect to any loss, damage or expense against which such companies are insured.          8

**LOSS PAYEE**
Loss, if any, payable to ASSURED                                                                          9
                                                                                                         10
or order.  11
Provided, however, Underwriters shall pay claims to others as set forth in the Collision Liability clause and may make direct payment to persons   12
providing security for the release of the Vessel in Salvage cases.                                       13

**VESSEL**
The Subject Matter of this insurance is the Vessel called the PER SCDHEDULE OF VESSELS                    14
or by whatsoever name or names the said Vessel is or shall be called, which for purposes of this insurance shall consist of and be limited to her hull,   15
launches, lifeboats, rafts, furniture, bunkers, stores, supplies, tackle, fittings, equipment, apparatus, machinery, boilers, refrigerating machinery, insu-   16
lation, motor generators and other electrical machinery.                                                 17
In the event any equipment or apparatus not owned by the Assured is installed for use on board the Vessel and the Assured has assumed respon-   18
sibility therefore, it shall also be considered part of the Subject Matter and the aggregate value thereof shall be included in the Agreed Value.   19
Notwithstanding the foregoing, cargo containers, barges and lighters shall not be considered a part of the Subject Matter of this insurance.   20

**DURATION OF RISK**
From the 6TH           day of FEBRUARY   2013, 12:01 A.M. Local Standard Time                            21
to the 6TH             day of FEBRUARY   2014, 12:01 A.M. Local Standard Time.                            22
Should the Vessel at the expiration of this Policy be at sea, or in distress, or at a port of refuge or of call, she shall, provided previous notice be   23
given to the Underwriters, be held covered at a pro rata monthly premium to her port of destination.     24
In the event of payment by the Underwriter for Total Loss of the Vessel this Policy shall thereupon automatically terminate.   25

**AGREED VALUE**
The vessel, for so much as concerns the Assured, by agreement between the Assured and the Underwriters in this Policy, is and shall be valued at   26
PER SCDHEDULE OF VESSELS                                     Dollars.                                     27

**AMOUNT INSURED HEREUNDER**
PER SCDHEDULE OF VESSELS                                     Dollars.                                     28

**DEDUCTIBLE**
Notwithstanding anything in this Policy to the contrary, there shall be deducted from the aggregate of all claims (including claims under the Sue   29
and Labor clause and claims under the Collision Liability clause) arising out of each separate accident, the sum of PER SCHEDULE unless the   30
accident results in a Total Loss of the Vessel in which case this clause shall not apply. A recovery from other interests, however, shall not operate to   31
exclude claims under this Policy provided the aggregate of such claims arising out of one separate accident if unreduced by such recovery exceeds that   32
sum. For the purpose of this clause each accident shall be treated separately, but it is agreed that (a) a sequence of damages arising from the same acci-   33
dent shall be treated as due to that accident and (b) all heavy weather damage, or damage caused by contact with floating ice, which occurs during a   34
single sea passage between two successive ports shall be treated as though due to one accident.          35

**Name of Insured**        **Policy Number** ZOH-15N11069-13-ND              **Effective Date** 02/06/13
SUNCOAST SHIPPING, LLC                                    **Processing Date** 06/12/13  15:29  001

OMOH0001 Ed. 6-2-77
℗ 1977 The Travelers Indemnity Company. All rights reserved.                          Page 1 of 6

## PREMIUM

The Underwriters to be paid in consideration of this insurance PER SCHEDULE OF VESSELS ......................................... 36
Dollars being at the annual rate of AGREED percent, which premium shall be due on attachment.  If the Vessel ......... 37
is insured under this Policy for a period of less than one year at pro rata of the annual rate, full annual premium shall be considered earned and immedi- ........ 38
ately due and payable in the event of Total Loss of the Vessel. .................................................................... 39

## RETURNS OF PREMIUM

Premium returnable as follows: ................................................................................................... 40
Pro rata daily net in the event of termination under the Change of Ownership clause; ....................................... 41
Pro rata monthly net for each uncommenced month if it be mutually agreed to cancel this Policy; ...................... 42
For each period of 30 consecutive days the Vessel may be laid up in port for account of the Assured, ................. 43
NOT APPLICABLE                                cents per cent, net not under repair, or ................................ 44
NOT APPLICABLE                                cents per cent net under repair, ...................................... 45
provided always that: ................................................................................................................ 46
  (a)  a Total Loss of the Vessel has not occurred during the currency of this Policy; ............................... 47
  (b)  in no case shall a return for lay-up be allowed when the Vessel is lying in exposed or unprotected waters or in any location not approved by ......... 48
    the Underwriters; ............................................................................................................ 49
  (c)  in the event of any amendment of the annual rate, the above rates of return shall be adjusted accordingly; ......... 50
  (d)  in no case shall a return be allowed when the Vessel is used as a storage ship or for lightering purposes. ......... 51
If the Vessel is laid up for a period of 30 consecutive days, a part only of which attaches under this Policy, the Underwriters shall pay such pro- ........ 52
portion of the return due in respect of a full period of 30 days as the number of days attaching hereto bears to 30. Should the lay-up period exceed 30 ........ 53
consecutive days, the Assured shall have the option to elect the period of 30 consecutive days for which a return is recoverable. ......... 54

## NON-PAYMENT OF PREMIUM

In event of non-payment of premium 30 days after attachment, or of any additional premium when due, this Policy may be cancelled by the Under- ........ 55
writers upon 10 days written or telegraphic notice sent to the Assured at his last known address or in care of the broker who negotiated this Policy. ........ 56
Such proportion of the premium, however, as shall have been earned up to the time of cancellation shall be payable.  In the event of Total Loss of ........ 57
the Vessel occurring prior to any cancellation or termination of this Policy full annual premium shall be considered earned. ......... 58

## ADVENTURE

Beginning the adventure upon the Vessel, as above, and so shall continue and endure during the period aforesaid, as employment may offer, in port or ........ 59
at sea, in docks and graving docks, and on ways, gridirons and pontoons, at all times, in all places, and on all occasions, services and trades; with leave ........ 60
to sail or navigate with or without pilots, to go on trial trips and to assist and tow vessels or craft in distress, but the Vessel may not be towed, except ........ 61
as is customary or when in need of assistance, nor shall the Vessel render assistance or undertake towage or salvage services under contract previously ........ 62
arranged by the Assured, the Owners, the Managers or the Charterers of the Vessel, nor shall the Vessel, in the course of trading operations, engage in ........ 63
loading or discharging cargo at sea, from or into another vessel other than a barge, lighter or similar craft used principally in harbors or inland waters. ........ 64
The phrase "engage in loading or discharging cargo at sea" shall include while approaching, leaving or alongside, or while another vessel is approaching, ........ 65
leaving or alongside the Vessel. ..................................................................................................... 66
The Vessel is held covered in case of any breach of conditions as to cargo, trade, locality, towage or salvage activities, or date of sailing, or loading ........ 67
or discharging cargo at sea, provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b) ........ 68
any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured. ......... 69

## PERILS

Touching the Adventures and Perils which the Underwriters are contented to bear and take upon themselves, they are of the Seas, Men-of-War, Fire ........ 70
Lightning, Earthquake, Enemies, Pirates, Rovers, Assailing Thieves, Jettisons, Letters of Mart and Counter-mart, Surprisals, Takings at Sea, Arrests, Re- ........ 71
straints and Detainments of all Kings, Princes and Peoples, of what nation, condition or quality soever, Barratry of the Master and Mariners and of all ........ 72
other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the Vessel, or any part thereof, excepting, how- ........ 73
ever, such of the foregoing perils as may be excluded by provisions elsewhere in the Policy or by endorsement thereon. ......... 74

## ADDITIONAL PERILS (INCHMAREE)

Subject to the conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by the following: ................... 75
Accidents in loading, discharging or handling cargo, or in bunkering; ............................................................ 76
Accidents in going on or off, or while on drydocks, graving docks, ways, gridirons or pontoons; ........................ 77
Explosions on shipboard or elsewhere; .............................................................................................. 78
Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any ........ 79
latent defect in the machinery or hull, (excluding the cost and expense of replacing or repairing the defective part); ......... 80
Breakdown of or accidents to nuclear installations or reactors not on board the insured Vessel; .......................... 81
Contact with aircraft, rockets or similar missiles, or with any land conveyance; ............................................. 82
Negligence of Charterers and/or Repairers, provided such Charterers and/or Repairers are not an Assured hereunder; ......... 83
Negligence of Masters, Officers, Crew or Pilots; ................................................................................... 84
provided such loss or damage has not resulted from want of due diligence by the Assured, the Owners or Managers of the Vessel, or any of them. ......... 85

OMOH0001 Ed. 6-2-77
Page 2 of 6
© 1977 The Travelers Indemnity Company. All rights reserved.

Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of this clause should they hold shares in the Vessel.   86

## DELIBERATE DAMAGE (POLLUTION HAZARD)

Subject to the conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by governmental authorities   87
acting for the public welfare to prevent or mitigate a pollution hazard, or threat thereof resulting directly from damage to the Vessel for which the   88
Underwriters are liable under this Policy, provided such act of governmental authorities has not resulted from want of due diligence by the Assured, the   89
Owners, or Managers of the Vessel or any of them to prevent or mitigate such hazard or threat. Masters, Officers, Crew or Pilots are not to be considered   90
Owners within the meaning of this clause should they hold shares in the Vessel.   91

## CLAIMS  (GENERAL PROVISIONS)

In the event of any accident or occurrence which could give rise to a claim under this Policy, prompt notice thereof shall be given to the Under-   92
writers, and:   93
   (a)  where practicable,  the  Underwriters  shall be advised prior to survey, so that they may appoint their own surveyor,  if they so desire;   94
   (b)  the Underwriters shall be entitled to decide where the Vessel shall proceed for docking and/or repair (allowance to be made to the Assured for the   95
       actual additional  expense of the voyage arising from compliance  with the Underwriters'  requirement);   96
   (c)  the Underwriters  shall have the right of veto in connection  with any repair firm proposed;   97
   (d)  the Underwriter may take tenders, or may require in writing that tenders be taken for the repair of the Vessel, in which event, upon acceptance   98
       of a tender with the approval of the Underwriters, an allowance shall be made at the rate of 30 per cent. per annum on the amount insured, for   99
       each day or pro rata for part of a day, for time lost between the issuance of invitations to tender and the acceptance of a tender, to the extent   100
       that such time is lost solely as the result of tenders having been taken and provided the tender is accepted without delay after receipt of the   101
       Underwriters'  approval.   102
Due credit shall be given against the  allowances  in (b) and  (d) above for any amount recovered:   103
   (1)  in respect of fuel, stores,  and  wages and maintenance  of the Master, Officers or Crew allowed in General or Particular Average;   104
   (2)  from third parties in respect  of damages  for detention  and/or loss of profit and/or running expenses;   105
for the period covered by the allowances  or any part thereof.   106
No claim shall be allowed in Particular Average for wages and maintenance of the Master, Officers or Crew, except when incurred solely for the   107
necessary removal of the Vessel from one port to another for average repairs or for trial trips to test average repairs, in which cases wages and mainte-   108
nance will be allowed only while the Vessel is under way.  This exclusion shall not apply to overtime or similar extraordinary payments to the Master,   109
Officers or Crew incurred in shifting the Vessel for tank cleaning or repairs or while specifically engaged in these activities, either in port or at sea.   110
General and Particular Average shall be payable without deduction, new for old.   111
The expense of sighting the bottom after stranding shall be paid, if reasonably incurred especially for that purpose, even if no damage be found.   112
No claim shall in any case be allowed in respect  of scraping or painting the Vessel's bottom.   113
In the event of loss or damage to equipment or apparatus not owned by the Assured but installed for the use on board the Vessel and for which the   114
Assured has assumed responsibility, claim shall not exceed (i) the amount the Underwriters would pay if the Assured were owner of such equipment or   115
apparatus,  or (2) the contractual  responsibility  assumed  by the Assured  to the owners or lessors thereof, whichever  shall  be less.   116
No claim for unrepaired damages shall be allowed, except to the extent that the aggregate damage caused by perils insured against during the period   117
of the Policy and left unrepaired at the expiration of the Policy shall be demonstrated by the Assured to have diminished the actual market value of the   118
Vessel on that date if undamaged  by such perils.   119

## GENERAL  AVERAGE  AND SALVAGE

General Average and Salvage shall be payable as provided in the contract of affreightment, or failing such provision or there be no contract of   120
affreightment, payable at the Assured's election either in accordance with York-Antwerp Rules 1950 or 1974 or with the Laws and Usages of the Port of   121
New York. Provided always that when an adjustment according to the laws and usages of the port of destination is properly demanded by the owners   122
of the cargo, General  Average shall be paid accordingly.   123
In the event of salvage, towage or other assistance being rendered to the Vessel by any vessel belonging in part or in whole to the same Owners or   124
Charterers, the value of such services (without regard to the common ownership or control of the vessels) shall be ascertained by arbitration in the man-   125
ner provided for under the Collision Liability clause in this Policy, and the amount so awarded so far as applicable to the interest  hereby insured shall   126
constitute  a charge  under  this Policy.   127
When the contributory value of the Vessel is greater than the Agreed Value herein, the liability of the Underwriters for General Average contribution   128
(except in respect to amounts made good to the Vessel), or Salvage, shall not exceed that proportion of the total contribution due from the Vessel which   129
the amount insured hereunder bears to the contributory value, and if, because of damage for which the Underwriters are liable as Particular Average, the   130
value of the Vessel has been reduced for the purpose of contribution, the amount of such Particular Average damage recoverable under this Policy shall   131
first be deducted from the amount insured hereunder, and the Underwriters shall then be liable only for the proportion which such net amount bears   132
to the contributory  value.   133

## TOTAL  LOSS

In ascertaining whether the Vessel is a constructive Total Loss the Agreed Value shall be taken as the repaired value and nothing in respect of the   134
damaged  or break-up  value of the Vessel or wreck shall be taken into account.   135
There shall be no recovery for a constructive Total Loss hereunder unless the expense of recovering and repairing the Vessel would exceed the   136
Agreed Value.  In making this determination, only expenses incurred or to be incurred by reason of a single accident or a sequence of damages arising   137

OMOH0001 Ed.  6-2-77
© 1977 The Travelers Indemnity Company. All rights reserved.

from the same accident shall be taken into account, but expenses incurred prior to tender of abandonment shall not be considered if such are to be     138
claimed separately under the Sue and Labor clause.     139

In the event of Total Loss (actual or constructive), no claim to be made by the Underwriters for freight, whether notice of abandonment has been     140
given or not.     141

In no case shall the Underwriters be liable for unrepaired damage in addition to a subsequent Total Loss sustained during the period covered by this     142
Policy.     143

## SUE AND LABOR

And in case of any Loss or Misfortune, it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns, to sue, labor and travel     144
for, in, and about the defense, safeguard and recovery of the Vessel, or any part thereof, without prejudice to this insurance, to the charges whereof     145
the Underwriters will contribute their proportion as provided below. And it is expressly declared and agreed that no acts of the Underwriters or Assured     146
in recovering, saving or preserving the Vessel shall be considered as a waiver or acceptance of abandonment.     147

In the event of expenditure under the Sue and Labor clause, the Underwriters shall pay the proportion of such expenses that the amount insured     148
hereunder bears to the Agreed Value, or that the amount insured hereunder (less loss and/or damage payable under this Policy) bears to the actual     149
value of the saived property, whichever proportion shall be less; provided always that their liability for such expenses shall not exceed their proportionate     150
part of the Agreed Value.     151

If claim for Total Loss is admitted under this Policy and sue and labor expenses have been reasonably incurred in excess of any proceeds realized     152
or value recovered, the amount payable under this Policy will be the proportion of such excess that the amount insured hereunder (without deduction     153
for loss or damage) bears to the Agreed Value, or to the sound value of the Vessel at the time of the accident, whichever value was greater; provided     154
always that Underwriters' liability for such expenses shall not exceed their proportionate part of the Agreed Value. The foregoing shall also apply to     155
expenses reasonably incurred in saiving or attempting to salve the Vessel and other property to the extent that such expenses shall be regarded as having     156
been incurred in respect of the Vessel.     157

## COLLISION LIABILITY

And it is further agreed that:     158

(a) if the Vessel shall come into collision with any other ship or vessel, and the Assured or the Surety in consequence of the Vessel being at fault     159
shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in respect of such collision, the     160
Underwriters will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as their respective sub-     161
scriptions hereto bear to the Agreed Value, provided always that their liability in respect to any one such collision shall not exceed their propor-     162
tionate part of the Agreed Value;     163

(b) in cases where, with the consent in writing of a majority (in amount) of Hull Underwriters, the liability of the Vessel has been contested, or pro-     164
ceedings have been taken to limit liability, the Underwriters will also pay a like proportion of the costs which the Assured shall thereby incur     165
or be compelled to pay.     166

When both vessels are to blame, then, unless the liability of the owner or Charterers of one or both such vessels becomes limited by law, claims     167
under the Collision Liability clauses shall be settled on the principle of Cross-Liabilities as if the owners or charterers of each vessel had been compelled     168
to pay the owners or Charterers of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed     169
in ascertaining the balance or sum payable by or to the Assured in consequence of such collision.     170

The principles involved in this clause shall apply to the case where both vessels are the property, in part or in whole, of the same owners or chart-     171
erers, all questions of responsibility and amount of liability as between the two vessels being left to the decision of a single Arbitrator, if the parties     172
can agree upon a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the Assured and one to be appointed     173
by the majority (in amount) of Hull Underwriters interested; the two Arbitrators chosen to choose a third Arbitrator before entering upon the reference,     174
and the decision of such single Arbitrator, or of any two of such three Arbitrators, appointed as above, to be final and binding.     175

Provided always that this clause shall in no case extend to any sum which the Assured or the Surety may become liable to pay or shall pay in conse-     176
quence of, or with respect to:     177

(a) removal or disposal of obstructions, wrecks or their cargoes under statutory powers or otherwise pursuant to law;     178

(b) injury to real or personal property of every description;     179

(c) the discharge, spillage, emission or leakage of oil, petroleum products, chemicals or other substances of any kind or description whatsoever;     180

(d) cargo or other property on or the engagements of the Vessel;     181

(e) loss of life, personal injury or illness.     182

Provided further that exclusions (b) and (c) above shall not apply to injury to other vessels or property thereon except to the extent that such injury     183
arises out of any action taken to avoid, minimize or remove any discharge, spillage, emission or leakage described in (c) above.     184

## PILOT AND TOWAGE

This insurance shall not be prejudiced by reason of any contract limiting in whole or in part the liability of pilots, tugs, towboats, or their owners     185
when the Assured or the agent of the Assured accepts such contract in accordance with established local practice.     186

Where in accordance with such practice, pilotage or towage services are provided under contracts requiring the Assured or the agent of the Assured:     187

(a) to assume liability for damage resulting from collision of the Vessel insured with any other ship or vessel, including the towing vessel, or     188

(b) to indemnify those providing the pilotage or towage services against loss or liability for any such damage,     189

it is agreed that amounts paid by the Assured or Surety pursuant to such assumed obligations shall be deemed payments "by way of damages to any other     190
person or persons" and to have been paid "in consequence of the Vessel being at fault" within the meaning of the Collision Liability clause in this Policy     191

OMOH0001 Ed. 6-2-77
Page 4 of 6

© 1977 The Travelers Indemnity Company. All rights reserved.

to the extent that such payments would have been covered if the Vessel had been legally responsible in the absence of any agreement. Provided always that in no event shall the aggregate amount of liability of the Underwriters under the Collision Liability clause, including this clause, be greater than the amount of any statutory limitation of liability to which owners are entitled or would be entitled if liability under any contractual obligation referred to in this clause were included among the liabilities subject to such statutory limitations. | 192 193 194 195

CHANGE OF OWNERSHIP

In the event of any change, voluntary or otherwise, in the ownership or flag of the Vessel, or if the Vessel be placed under new management, or be chartered on a bareboat basis or requisitioned on that basis, or if the Classification Society of the Vessel or her class therein be changed, cancelled or withdrawn, then, unless the Underwriters agree thereto in writing, this Policy shall automatically terminate at the time of such change of ownership, flag, management, charter, requisition or classification; provided, however, that:

(a) if the Vessel has cargo on board and has already sailed from her loading port, or is at sea in ballast, such automatic termination shall, if required, be deferred until final arrival at final port of discharge if with cargo, or at port of destination if in ballast;

(b) in the event of an involuntary temporary transfer by requisition or otherwise, without the prior execution of a written agreement by the Assured, such automatic termination shall occur fifteen days after such transfer.

This insurance shall not inure to the benefit of any transferee or charterer of the Vessel and, if a loss payable hereunder should occur between this time of change or transfer and any deferred automatic termination, the Underwriters shall be subrogated to all of the rights of the Assured against the transferee or charterer in respect of all or part of such loss as is recoverable from the transferee or charterer, and in the proportion which the amount insured hereunder bears to the Agreed Value.

The term "new management" as used above refers only to the transfer of the management of the Vessel from one firm or corporation to another, and it shall not apply to any internal changes within the offices of the Assured.

ADDITIONAL INSURANCE

It is a condition of this Policy that no additional insurance against the risk of Total Loss of the Vessel shall be effected to operate during the currency of this Policy by or for account of the Assured, Owners, Managers, Operators or Mortgagees except on the interests and up to the amounts enumerated in the following Sections (a) to (g), inclusive, and no such insurance shall be subject to P.P.I., F.I.A. or other like term on any interests whatever excepting those enumerated in Section (a); provided always and notwithstanding the limitation on recovery in the Assured clause a breach of this condition shall not afford the Underwriters any defense to a claim by a Mortgagee who has accepted this Policy without knowledge of such breach:

(a) DISBURSEMENTS, MANAGERS' COMMISSIONS, PROFITS OR EXCESS OR INCREASED VALUE OF HULL AND MACHINERY, AND/OR SIMILAR INTERESTS HOWEVER DESCRIBED, AND FREIGHT (INCLUDING CHARTERED FREIGHT OR ANTICIPATED FREIGHT) INSURED FOR TIME. An amount not exceeding in the aggregate 25% of the Agreed Value.

(b) FREIGHT OR HIRE, UNDER CONTRACTS FOR VOYAGE. An amount not exceeding the gross freight or hire for the current cargo passage and next succeeding cargo passage (such insurance to include, if required, a preliminary and an intermediate ballast passage) plus the charges of insurance. In the case of a voyage charter where payment is made on a time basis, the amount shall be calculated on the estimated duration of the voyage, subject to the limitation of two cargo passages as laid down herein. Any amount permitted under this Section shall be reduced, as the freight or hire is earned, by the gross amount so earned. Any freight or hire to be earned under the form of Charters described in (d) below shall not be permitted under this Section (b) if any part thereof is insured as permitted under said Section (d).

(c) ANTICIPATED FREIGHT IF THE VESSEL SAILS IN BALLAST AND NOT UNDER CHARTER. An amount not exceeding the anticipated gross freight on next cargo passage, such amount to be reasonably estimated on the basis of the current rate of freight at time of insurance, plus the charges of insurance. Provided, however, that no insurance shall be permitted by this Section if any insurance is effected as permitted under Section (b)

(d) TIME CHARTER HIRE OR CHARTER HIRE FOR SERIES OF VOYAGES. An amount not exceeding 50% of the gross hire which is to be earned under the charter in a period not exceeding 18 months. Any amount permitted under this Section shall be reduced as the hire is earned under the charter by 50% of the gross amount so earned but, where the charter is for a period exceeding 18 months, the amount insured need not be reduced while it does not exceed 50% of the gross hire still to be earned under the charter. An insurance permitted by this Section may begin on the signing of the charter.

(e) PREMIUMS. An amount not exceeding the actual premiums of all interests insured for a period not exceeding 12 months (excluding premiums insured as permitted under the foregoing Sections but including, if required, the premium or estimated calls on any Protection and Indemnity or War Risks and Strikes insurance ) reducing pro rata monthly.

(f) RETURNS OF PREMIUM. An amount not exceeding the actual returns which are recoverable subject to "and arrival" or equivalent provision under any policy of insurance.

(g) INSURANCE IRRESPECTIVE OF AMOUNT AGAINST: Risks excluded by War, Strikes and Related Exclusions clause; risks enumerated in the American Institute War Risks and Strikes Clauses; and General Average and Salvage Disbursements.

WAR STRIKES AND RELATED EXCLUSIONS

The following conditions shall be paramount and shall supersede and nullify any contrary provisions of the Policy.

This Policy does not cover any loss, damage or expense caused by, resulting from, or incurred as a consequence of:

(a) Capture, seizure, arrest, restraint or detainment, or any attempt thereat; or

(b) Any taking of the Vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; or

(c) Any mine, bomb or torpedo not carried as cargo on board the Vessel; or

(d) Any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter; or

(e) Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy; or

(f)  Strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military or usurped power; or   246
(g)  Malicious acts or vandalism, unless committed by the Master or Mariners and not excluded elsewhere under this War Strikes and Related   247
       Exclusions clause; or   248
(h)  Hostilities or warlike operations (whether there be a declaration of war or not) but this subparagraph (h) not to exclude -collision or contact with   249
       aircraft, rockets or similar missiles, or with any fixed or floating object, or stranding, heavy weather, fire or explosion unless caused directly by   250
       a hostile act by or against a belligerent power which act is independent of the nature of the voyage or service which the Vessel concerned or, in   251
       the case of a collision, any other vessel involved therein, is performing.  As used herein, "power" includes any authority maintaining, naval, mili-   252
       tary or air forces in association with a power.   253
       If war risks or other risks excluded by this clause are hereafter insured by endorsement on this Policy, such endorsement shall supersede the above   254
       conditions only to the extent that the terms of such endorsement are inconsistent therewith and only while such endorsement remains in force.   255

● 1977 The Travelers Indemnity Company. All rights reserved.

**American Institute**
**TUG FORM**                                                                   **53R-1**
**(August 1, 1976)**

To be attached to and form a part of Policy No. ZOH-15N11069-13-ND
of the TRAVELERS PROPERTY CASUALTY CO. OF AMERICA

   The terms and conditions of the following clauses are to be regarded as substituted for those of the policy form to which they are attached, the latter being hereby waived, except provisions required by law to be inserted in the Policy. All captions are inserted only for purposes of reference and shall not be used to interpret the clauses to which they apply.

**ASSURED**
   This Policy insures SUNCOAST SHIPPING, LLC                                                    1
                                        hereafter referred to as the Assured.   2
   If claim is made under this Policy by anyone other than the Owner of the Vessel, such person shall not be entitled to recover to a greater extent   3
than would the Owner, had claim been made by the Owner as an Assured named in this Policy.   4
   Underwriters waive any right of subrogation against affiliated, subsidiary or interrelated companies of the Assured, provided that such waiver   5
shall not apply in the event of a collision between the Vessel and any vessel owned, demise chartered or otherwise controlled by any of the aforesaid   6
companies, or with respect to any loss, damage or expense against which such companies are insured.   7

**LOSS PAYEE**
   Loss, if any, (excepting claims required to be paid to others under the Collision and Tower's Liability Clause), payable to ASSURED   8
                                             or order.   9
                                          10

**VESSEL**
   The Subject Matter of this insurance is the Vessel called the PER SCHEDULE OF VESSELS   11
or by whatsoever name or names, the said Vessel is or shall be called, which for purposes of this insurance shall consist of and be limited to her hull,   12
launches, lifeboats, rafts, furniture, bunkers, stores, supplies, tackle, fittings, equipment, apparatus, machinery, boilers, refrigerating machinery, insulation,   13
motor generators and other electrical machinery.   14
   In the event any equipment or apparatus not owned by the Assured is installed for use on board the Vessel and the Assured has assumed, respon-   15
sibility therefor, it shall also be considered part of the Subject Matter and the aggregate value thereof shall be included in the Agreed Value.   16
   In the event that more than one vessel is insured by the Policy, all of these clauses shall apply as though a separate policy had been issued   17
with respect to each vessel.   18

**TRADING WARRANTY**
   Warranted that the Vessel shall be confined to the WATERS OF THE BAHAMAS EXTENDED TO INCLUDE THE DELIVERY   19
TRIP TO AND FROM STATEN ISLAND   20
   Any breach of the Trading Warranty specified in this Policy shall result in a suspension thereof, provided, however, that on the return of the   21
Vessel in a seaworthy condition to within the limit stated in the said Trading Warranty this Policy shall re-attach and continue in full force and effect   22
but in no event beyond the normal expiry thereof.   23

**DURATION OF RISK**
   From the 6TH        day of FEBRUARY   2013, 12:01 LS   time,   24
   to the 6TH        day of FEBRUARY   2014, 12:01 LS   time   25
   Should the Vessel at the expiration of this Policy be at sea, or in distress, or at a port of refuge or of call, she shall, provided previous notice   26
be given to the Underwriters, be held covered at a pro rata monthly premium to her port of destination.   27
   In the event of payment by the Underwriters for Total Loss of the Vessel this Policy shall thereupon automatically terminate.   28

**AGREED VALUE**
   The Vessel, for so much as concerns the Assured, by agreement between the Assured and the Underwriters in this Policy, is and shall be valued at   29
PER SCHEDULE OF VESSELS                  Dollars.   30

**AMOUNT INSURED HEREUNDER**
PER SCHEDULE OF VESSELS                  Dollars.   31

**PREMIUM**
   The Underwriters to be paid in consideration of this insurance PER SCHEDULE OF VESSELS   32
                        Dollars being at the rate of AGREED   per cent,   33
which premium shall be due on attachment.   34

---

Name of Insured      Policy Number ZOH-15N11069-13-ND      Effective Date 02/06/13
SUNCOAST SHIPPING, LLC                 Processing Date 06/12/13   15:29   001

OMOH0004 Ed. 8-1-76
© 1976 The Travelers Indemnity Company. All rights reserved.                 Page 1 of 5

## DEDUCTIBLE

Notwithstanding anything in this Policy to the contrary, there shall be deducted from the aggregate of all claims (including claims under the Sue    35
and Labor Clause and claims under the Collision and Tower's Liability Clause) arising out of each separate accident, the sum of SPER SCOHEDULE    36
, unless the accident results in a Total Loss of the Vessel in which case this clause shall not apply to the claim    37
for the Total Loss of the Vessel and to claims under the Sue and Labor clause. A recovery from other interests, however, shall not operate to exclude    38
claims under this Policy provided the aggregate of such claims arising out of one separate accident if unreduced by such recovery exceeds that sum.    39
For the purpose of this clause each accident shall be treated separately, but it is agreed that (a) a sequence of damages arising from the same accident    40
shall be treated as due to that accident and (b) all heavy weather damage which occurs during a single sea passage between two successive ports    41
shall be treated as though due to one accident.    42

## RETURNS OF PREMIUM

Premium returnable as follows:    43
pro rata daily in the event of termination under the Change of Ownership clause;    44
pro rata daily if this Policy be cancelled by the Underwriters;    45
short rate will be charged if this Policy be cancelled by the Assured;    46
NOT APPLICABLE cents per cent, for each period of 30 consecutive days the Vessel may be laid up in port not under repair;    47
provided always that:    48
    (a)  from all return premiums the same percentage of deduction (if any) shall be made as was allowed by the Underwriters on receipt of the original    49
        premium;    50
    (b)  a Total Loss of the Vessel has not occurred during the currency of this Policy;    51
    (c)  in no case shall a return for lay-up be allowed when the Vessel is lying exposed or unprotected waters or in any location not approved by    52
        the Underwriters;    53
    (d)  in the event of any amendment of the annual rate, the above rates of return shall be adjusted accordingly.    54
If the Vessel is laid up for a period of 30 consecutive days, a part only of which attaches under this Policy, the Underwriters shall pay such    55
proportion of the return due in respect of a full period of 30 days as the number of days attaching hereto bears to 30. Should the lay-up period exceed    56
30 consecutive days, the Assured shall have the option to elect the period of 30 consecutive days for which a return is recoverable.    57

## CANCELLATION

This Policy may be cancelled either by the Underwriters or by the Assured giving 15 days' written or telegraphic notice to the other. Underwriters'    58
notice may be sent to the Assured's last known address or in care of the Broker who negotiated this Policy. In the event of Total Loss of the Vessel    59
occurring prior to any cancellation or termination of this Policy, full annual premium shall be considered earned.    60

## ADVENTURE

Beginning the adventure upon the Vessel, as above, and so shall continue and endure during the period aforesaid, subject to all the terms, conditions    61
and warranties of this Policy, as employment may offer, in port or at sea, in docks and graving docks, and on ways, gridirons and pontoons, at all times,    62
in all places, and on all occasions.    63

## PERILS

Touching the Adventures and Perils which the Underwriters are contented to bear and take upon themselves, they are of the Waters named herein,    64
Fire, Lightning, Earthquake, Assailing Thieves, Jettisons, Barratry of the Master and Mariners and all other like Perils that shall come to the Hurt, De-    65
triment or Damage of the Vessel.    66

## ADDITIONAL PERILS (INCHMAREE)

Subject to the conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by the following:    67
    Accidents in loading, discharging or handling cargo, or in bunkering;    68
    Accidents in going on or off, or while on drydocks, graving docks, ways, gridirons or pontoons;    69
    Explosions on shipboard or elsewhere;    70
    Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any    71
    latent defect in the machinery or hull, (excluding the cost and expense of replacing or repairing the defective part);    72
    Breakdown of or accidents to nuclear installations or reactors not on board the insured Vessel;    73
    Contact with aircraft, rockets or similar missiles, or with any land conveyance.    74
    Negligence of Charterers and/or Repairers, provided such Charterers and/or Repairers are not an Assured hereunder;    75
    Negligence of Masters, Officers, Crew or Pilots;    76
provided such loss or damage has not resulted from want of due diligence by the Assured, the Owners or Managers of the Vessel, or any of them.    77

## COLLISION AND TOWER'S LIABILITY

And it is further agreed that:    78
    (a)  if the Vessel hereby insured shall come into collision with any other vessel, craft or structure, floating or otherwise (including her tow); or shall    79
        strand her tow or shall cause her tow to come into collision with any other vessel, craft or structure, floating or otherwise, or shall cause any    80
        other loss or damage to her tow or to the freight thereof or to the property on board, and the Assured or the Surety, in consequence of the    81
        insured Vessel being at fault, shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums    82
        we, the Underwriters, will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as our    83
        subscriptions hereto bear to the value of the Vessel hereby insured, provided always that our liability in respect of any one such casualty shall not    84
        exceed our proportionate part of the value of the Vessel hereby insured.    85
    (b)  in cases where, the liability of the Vessel has been contested or proceedings have been taken to limit liability with the consent in writing of a    86

OMOH0004 Ed. 8-1-76
© 1976 The Travelers Indemnity Company. All rights reserved.

majority (in amount) of the Underwriters on the hull and machinery, we will also pay a like proportion of the costs which the Assured shall thereby incur or be compelled to pay. 87 88

When both vessels are to blame, then, unless the liability of the Owners of one or both of such vessels becomes limited by law, claims under the Collision and Tower's Liability clause shall be settled on the principle of Cross-Liabilities, as if the Owners of each vessel had been compelled to pay to the Owners of the other of such vessels each one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance of sum payable by or to the Assured in consequence of such casualty. 89 90 91 92

It is hereby further agreed that the principles, involved in this clause shall apply to the case where two or more of the vessels involved are the property, in part or in whole, of the same Assured, all questions of responsibility and amount of liability as between such Vessels being left to the decision of a single Arbitrator, if the parties can agree upon a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the Assured and one to be appointed by a majority (in amount) of the Underwriters on hull and machinery; the two Arbitrators so chosen to choose a third Arbitrator before entering upon the reference, and the decision of such single Arbitrator, or of any two of such three Arbitrators, appointed as above, to be final and binding. 93 94 95 96 97 98

Provided always that this Collision and Tower's Liability clause shall in no case extend to any sum which the Assured or the Surety may become liable to pay, or shall pay: 99 100

I.   for loss, damage or expense to vessel(s) in tow owned (other than vessel(s) bareboat chartered to others), bareboat chartered, managed or operated by the Assured and/or its affiliated and/or subsidiary companies and/or corporations, and to cargo, owned by the Assured and/or its affiliated and/or subsidiary companies and/or corporations on board vessel(s) in tow of the Vessel hereby insured; or 101 102 103

II.   in consequence of, with respect to, or arising out of: 104
    (a)   removal or disposal of obstruction, wrecks or their cargoes under statutory powers or otherwise pursuant to law; 105
    (b)   cargo, baggage or engagements of the insured Vessel; 106
    (c)   loss of life, personal injury or illness; 107
    (d)   the discharge, spillage, emission or leakage of oil, petroleum, products, chemicals or other substances of any kind or description whatsoever. 108

Provided, further that Exclusions II (d) shall not apply to actual physical loss of or damage to such substance (if liability therefore is otherwise covered under the attached Policy) except to the extent that such loss or damage arises out of any action taken to avoid, minimize or remove any discharge, spillage, emission or leakage described in Exclusion II (d) 109 110 111

GENERAL AVERAGE AND SALVAGE

General Average and Salvage shall be payable in accordance with the laws and usages of the port of New York, but excluding wages, provisions, fuel and engine stores during detention however caused. 112 113

And it is further agreed that in the event of salvage, towage or other assistance being rendered to the Vessel hereby insured by any vessel belonging in part or in whole to the same owners or charterers, the value of such services (without regard to the common ownership or control of the vessels) shall be ascertained by arbitration in the manner above provided for under the Collision and Tower's Liability clause, and the amount so awarded so far as applicable to the interest hereby insured shall constitute a charge under this Policy. 114 115 116 117

When the contributory value of the Vessel is greater than the Agreed Value herein, the liability of the Underwriters for General Average contribution (except in respect to amounts made good to the Vessel), or Salvage, shall not exceed that proportion of the total contribution due from the Vessel which the amount insured hereunder bears to the contributory value; and if, because of damage for which the Underwriters are liable as Particular Average, the value of the Vessel has been reduced for the purpose of contribution, the amount of such Particular Average damage recoverable under this Policy shall first be deducted from the amount insured hereunder, and the Underwriters shall then be liable only for the proportion which such net amount bears to the contributory value. 118 119 120 121 122 123

SUE AND LABOR

And in case of any Loss or Misfortune, it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the Vessel, or any part thereof, without prejudice to this insurance, to the charges whereof the Underwriters will contribute their proportion as provided below. And it is expressly declared and agreed that no acts of the Underwriters or Assured in recovering, saving or preserving the Vessel shall be considered as a waiver or acceptance of abandonment. 124 125 126 127

In the event of expenditure under the Sue and Labor clause, the Underwriters shall pay the proportion of such expenses that the amount insured hereunder bears to the Agreed Value, or that the amount insured hereunder (less loss and/or damage payable under this Policy) bears to the actual value of the salved property whichever proportion shall be less; provided always that their liability for such expenses shall not exceed their proportionate part of the Agreed Value. 128 129 130 131

If claim for Total Loss is admitted under this Policy and sue and labor expenses have been reasonably incurred in excess of any proceeds realized or value recovered, the amount payable under this Policy will be the proportion of such excess that the amount insured hereunder (without deduction for loss or damage) bears to the Agreed Value or to the sound value of the Vessel at the time of the accident, whichever value was greater; provided always that Underwriters' liability for such expenses shall not exceed their proportionate part of the Agreed Value. The foregoing shall also apply to expenses reasonably incurred in salving or attempting to salve the Vessel and other property to the extent that such expenses shall be regarded as having been incurred in respect of the Vessel. 132 133 134 135 136 137

SEAWORTHINESS

The Underwriters shall not be liable for any loss, damage or expense arising out of the failure of the Assured to exercise due diligence to maintain the Vessel in a seaworthy condition after attachment of this Policy; the foregoing, however, not to be deemed a waiver of any warranty of seaworthiness implied at law. 138 139 140

WATCHMAN

It is agreed that when this Vessel is tied up or moored, it shall be at all times in charge of a watchman in the employ of the Assured, whose duty it shall be to make careful examination of the Vessel throughout, at reasonable intervals, including inspection of the bilges. 141 142

OMOH0004 Ed. 8-1-76
© 1976 The Travelers Indemnity Company. All rights reserved.

Page 3 of 5

CHANGE OF OWNERSHIP

In the event of any change, voluntary or otherwise, in the ownership or flag of the Vessel, or if the Vessel be placed under new management, or be   143
chartered on a bareboat basis or requisitioned on that basis, or if the Classification Society of the Vessel or her class therein be changed, cancelled or   144
withdrawn, then, unless the Underwriters agree thereto in writing, this Policy shall automatically terminate at the time of such change of ownership,   145
flag, management, charter, requisition or classification; provided, however, that in the event of an involuntary temporary transfer by requisition or   146
otherwise, without the prior execution of a written agreement by the Assured, such automatic termination shall occur fifteen days after such transfer.   147
This insurance shall not inure to the benefit of any transferee or charterer of the Vessel and, if a loss payable hereunder should occur between the   148
time of change or transfer and any deferred automatic termination, the Underwriters shall be subrogated to all of the rights of the Assured against the   149
transferee or charterer in respect of all or part of such loss as is recoverable from the transferee of charterer, and in the proportion which the amount   150
insured hereunder bears to the Agreed Value.   151
The term "new management" as used above refers only to the transfer of the management of the Vessel from one firm or corporation to another,   152
and it shall not apply to any internal changes within the offices of the Assured.   153

ADDITIONAL INSURANCES

It is a condition of this Policy that there shall be no other insurance against physical loss of or damage to the Vessel for or on account of the   154
Assured except that the Assured may, without prejudice to this Insurance, insure:   155
(a)   War, Strikes and related risks not covered by this Policy;   156
(b)   Risks identical to those covered by this Policy for the difference in amount, if any, between the "AMOUNT INSURED HEREUNDER" and the   157
"AGREED VALUE";   158
provided that any breach of the above condition shall not afford the Underwriters any defense to a claim by a mortgagee who has accepted this Policy   159
without knowledge of such breach.   160

CLAIMS (GENERAL PROVISIONS)

In the event of any accident or occurrence which could give rise to a claim under this Policy, prompt notice thereof shall be given to the   161
Underwriters, and:   162
(a)   where practicable, the Underwriters shall be advised prior to survey, so that they may appoint their own surveyor, if they so desire;   163
(b)   the Underwriters shall be entitled to decide where the Vessel shall proceed for docking and/or repair (allowance to be made to the Assured   164
for the actual additional expense of the voyage arising from compliance with the Underwriter's requirement);   165
(c)   the Underwriters shall have the right of veto in connection with any repair firm proposed;   166
(d)   the Underwriters may take tenders or may require tenders to be taken for the repair of the Vessel, in which event, upon acceptance of a   167
tender with the approval of the Underwriters, an allowance shall be made at the rate of 30 per cent. per annum on the amount insured, for   168
each day or pro rata for part of a day, for time lost between the issuance of invitations to tender and the acceptance of a tender, to the extent   169
that such time is lost solely as the result of tenders having been taken and provided the tender is accepted without delay after receipt of the   170
Underwriters' approval.   171
Due credit shall be given against the allowance in (b) and (d) above for any amount recovered:   172
(1) in respect of fuel, stores, and wages and maintenance of the Master, Officers and Crew members allowed in General or Particular Average;   173
(2) from third parties in respect of damages for detention and/or loss of profit and/or running expenses; for the period covered by the allow-   174
ances or any parts thereof.   175
No claim shall be allowed in Particular Average for wages and maintenance of the Master, Officers and Crew, except when incurred solely for   176
the necessary removal of the vessel from one port to another for average repairs or for trial trips to test average repairs, in which cases wages and   177
maintenance will be allowed only while the vessel is under way.   178
General and Particular Average shall be payable without deduction, new for old.   179
The expense of sighting the bottom after stranding shall be paid, if reasonably incurred especially for that purpose, even if no damage be found.   180
No claims shall in any case be allowed in respect of scraping or painting the Vessel's bottom.   181
In the event of loss or damage to equipment or apparatus not owned by the Assured but installed for use on board the Vessel and for which the   182
Assured has assumed responsibility, claim shall not exceed (1) the amount the Underwriters would pay if the Assured were owner of such equipment or   183
apparatus, or (2) the contractual responsibility assumed by the Assured to the owners or lessors thereof, whichever shall be less.   184
No claim for unrepaired damage shall be allowed, except to the extent that the aggregate damage caused by perils insured against during the period   185
of this Policy and left unrepaired at the expiration thereof shall be demonstrated by the Assured to have diminished the actual market value of the   186
Vessel on that date if undamaged by such perils.   187

TOTAL LOSS

There shall be no recovery for a constructive Total Loss hereunder unless the expense of recovering and repairing the Vessel would exceed the Agreed   188
Value. In making this determination, only expenses incurred or to be incurred by reason of a single accident or a sequence of damages arising from the   189
same accident shall be taken into account, but expenses incurred prior to tender of abandonment shall not be considered if such are to be claimed separately   190
under the Sue and Labor clause.   191
In ascertaining whether the Vessel is a constructive Total Loss the Agreed Value shall be taken as the repaired value and nothing in respect of   192
the damaged or break-up value of the Vessel or wreck shall be taken into account.   193
In the event of Total Loss (actual or constructive), no claims to be made by the Underwriters for freight, whether notice of abandonment has been   194
given or not.   195
In no case shall the Underwriters be liable for unrepaired damage in addition to a subsequent Total Loss sustained during the period covered by this   196
Policy.   197

OMOH0004 Ed. 8-1-76
Page 4 of 5

© 1976 The Travelers Indemnity Company. All rights reserved.

SUBROGATION

Upon making any payment under this Policy the Underwriters shall be vested with all of the Assured's rights of recovery against any person, [198] corporation, vessel or interest, and the Assured shall execute and deliver such instruments and papers as the Underwriters shall require and do whatever [199] else is necessary to secure such rights at the time of payment or subsequent thereto. At the option of the Underwriters, such payment may be made [200] by means of a loan receipt repayable only out of any recovery made by the Underwriters as aforesaid. Such loan receipt shall be in the customary form [201] permitting Underwriters to bring suit in the name of the Assured of the Underwriters at the latter's own cost and expense. [202]

Any agreement, contract or act, past or future, express or implied, by the Assured whereby any right of recovery of the Assured against any person, [203] corporation, vessel or interest is released, decreased, transferred or lost which would, on payment of claim by the Underwriters, belong to the Underwriters [204] but for such agreement, contract or act shall render this Policy null and void as to the amount of any such claim, but only to the extent and to the [205] amount that said agreement, contract or act releases, decreases, transfers, or causes the loss of any right of recovery of the Underwriters, but the Under- [206] writers' right to retain or recover the full premium shall not be affected. [207]

LITIGATION  AND  DEFENSE

The Underwriters shall have the option of naming the attorneys who shall represent the Assured in the prosecution or defense of any litigation [208] or negotiations between the Assured and third parties concerning any claim, loss or interest covered by this Policy, and the Underwriters shall have the [209] direction of such litigation or negotiations. If the Assured shall fail or refuse to settle any claim as authorized by the Underwriters, the liability of [210] the Underwriters to the Assured shall be limited to the amount of which settlement could have been made. [211]

No suit, action or proceedings brought by the Assured against the Underwriters for the recovery of any claim under this Policy shall be sustainable [212] in any court of law or equity unless the same be commenced within twelve (12) months after the Underwriters have denied liability for payment of claim; [213] except that in the case of a claim arising under the Collision and Tower's Liability clause, no suit or action shall be sustainable unless brought within [214] twelve (12) months next after the Assured shall have discharged this liability. Provided, however, that if by the laws of the State within which this Policy [215] is issued such limitation is invalid, then any such claim shall be void unless such action, suit or proceeding be commenced within the shortest limit of [216] time permitted by the laws of such State. [217]

WAR,  STRIKES  AND  RELATED  EXCLUSIONS

The following conditions shall be paramount and shall supersede and nullify any contrary provisions of the Policy. [218]

This Policy does not cover any loss, damage or expense caused by, resulting from, or incurred as a consequence of: [219]

(a)   Capture, seizure, arrest, restraint or detainment, or any attempt thereat; or [220]

(b)   Any taking of the Vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; or [221]

(c)   Any mine, bomb or torpedo not carried as cargo on board the Vessel; or [222]

(d)   Any weapon of war employing atomic or nuclear fission or fusion or other reaction or radioactive force or matter; or [223]

(e)   Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy; or [224]

(f)   Strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military or usurped power, malicious acts or vandalism; or [225]

(g)   Hostilities or warlike operations (whether there be a declaration of war or not) but this subparagraph (g) not to exclude collision or contact [226] with aircraft, rockets or similar missiles, or with any fixed or floating object, or stranding, heavy weather, fire or explosion unless caused directly [227] by a hostile act by or against a belligerent power which act is independent of the nature of the voyage or service which the Vessel concerned [228] or, in the case of a collision, any other vessel involved therein, is performing. As used herein, "power" includes any authority maintaining naval, [229] military or air forces in association with a power. [230]

If war risks or other risks excluded by this clause are hereafter insured by endorsement on this Policy, such endorsement shall supersede the [231] above conditions only to the extent that the terms of such endorsement are inconsistent therewith and only while such endorsement remains in force. [232]

© 1976 The Travelers Indemnity Company. All rights reserved.

AMERICAN INSTITUTE
S. R. & C. C. ENDORSEMENT (HULLS)

(September 8, 1959)

87 B-46
(Revised)

In consideration of an additional premium, as provided below, this insurance is extended to cover additional risks, from and after **February 6, 2013** in accordance with the following clause:

"This insurance also covers damage to or destruction of the property insured directly caused by strikers, locked out workmen, or persons taking part in labor disturbances or riots or civil commotions or caused by vandalism, sabotage, or malicious mischief, but excluding civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, and warranted free from any claim for delay, detention or loss of use, and free from all loss, damage or expense caused by any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter.

Notwithstanding the exclusions in the F. C. & S. Clause in the within policy 'vandalism,' 'sabotage,' and 'malicious mischief,' as used herein, shall be construed to include wilful or malicious physical injury to or destruction of the described property caused by acts committed by an agent of any Government, party or faction engaged in war, hostilities, or other warlike operations, provided such agent is acting secretly and not in connection with any operations of military or naval armed forces in the country where the described property is situated."

Until further notice the Assured shall pay, for the additional protection afforded by the above clause, an additional premium of **INCL** percent.  The Underwriters have the right nevertheless to change this rate at any time on 15 days written notice to the Assured; but the Assured shall have the option to cancel this endorsement as of the time when such change of rate would take effect, provided previous notice of such cancellation be given to the Underwriters.  The rate may be changed as above notwithstanding strikes, labor troubles or civil commotions, on board the vessel or elsewhere, may be threatened or actually exist either at the time when such notice is given or when it takes effect.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/12/13  15:29  001 |

OMOH0105 Ed. 9-8-59
© 1959 The Travelers Indemnity Company. All rights reserved.

Page 1 of 1

## SCHEDULE OF VESSELS

### 02/06/13   - 02/06/2014

| Item No. | Vessel Name | Hull Amount Insured | Hull Deductible | Hull Rate | Hull Premium | P & I Limit | P & I Deductible | P & I Premium |
|---|---|---|---|---|---|---|---|---|
| 1. | Barge "Flag 4000" | $1,000,000. | $10,000. | Agreed | $12,500.00 | $1,000,000 | $10,000. | $ 3,000.00 |
| | | | | | | | BI $10,000. PD $10,000. | |
| 2. | Tug "Billy G" | $  350,000. | $10,000. | Agreed | $35,000.00 | $1,000,000 | $10,000. | **$18,500. |
| | | | | | | | BI $10,000. PD | |
| | TOTAL | $1,350,000. | | | $47,500.00 | | | $21,500.00 |

**Includes 5 Crew

Each vessel separately insured.

| | | |
|---|---|---|
| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
| SUNCOAST SHIPPING, LLC | | Processing Date 06/12/13  15:29  001 |

OMOH0122 Rev. 7-08
© 2008 The Travelers Indemnity Company                    Page 1 of 2

## SCHEDULE OF VESSELS
### (continued)

| Item No. | Vessel Name | Hull Amount Insured | Hull Deductible | Hull Rate | Hull Premium | P & I Limit | P & I Deductible | P & I Premium |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

OMOH0122 Rev. 7-08
Page 2 of 2

© 2008 The Travelers Indemnity Company

**SERVICE OF SUIT CLAUSE**

It is agreed that in the event of the failure of Insurers hereon to pay any amount claimed to be due hereunder, Insurers hereon, at the request of the Insured (or Reinsured) will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon:

and that in any suit instituted against any one of them upon this contract. Insurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above named are authorized and directed to accept service of process on behalf of Insurers in any suit and/or upon the request of the Insured (or Reinsured), to give a written undertaking to the Insured (or Reinsured), that they will enter a general appearance upon Insurer's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Insurers hereon designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of Insurance (or Reinsurance), and hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/12/13  15:29  001 |

OMDH0123 Ed. 7-05
© 2005 The Travelers Indemnity Company. All rights reserved.                                    Page 1 of 1

American Institute                                                    6Z-4
DELIBERATE DAMAGE - POLLUTION HAZARD (HULL)

(February 1, 1976)

In consideration of premium paid it is understood and agreed that, subject to the terms and
conditions of this Policy, this insurance also covers loss of or damage to the Vessel
directly caused by governmental authorities acting for the public welfare to prevent or
mitigate a pollution hazard, or threat thereof, resulting directly from damage to the Vessel
for which the Underwriters are liable under this Policy, provided such act of governmental
authorities has not resulted from want of due diligence by the Assured, the Owners, or
Managers of the Vessel or any of them to prevent or mitigate such hazard or threat.
Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of
this clause should they hold shares in the Vessel.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms,
conditions, provisions, agreements or limitations of the above mentioned policy, other than
as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
| --- | --- | --- |
| SUNCOAST SHIPPING, LLC | | Processing Date 06/12/13  15:29  001 |

OMOH0139 Ed. 2-1-76
© 1976 The Travelers Indemnity Company. All rights reserved.                Page 1 of 1

Case 2:14-cv-14360-DMM   Document 22-1   Entered on FLSD Docket 02/18/2015   Page 36 of 67

Case 2:14-cv-14360-XXXX   Document 1-3   Entered on FLSD Docket 09/05/2014   Page 36 of 69

PROTECTION AND INDEMNITY                                          SP-23
                                                           (Revised 1/56)

Amount Insured   $1,000,000.00

Premium       SPER SCHEDULE

Rate          AGREED

SUNCOAST SHIPPING, LLC
                                                    hereinafter called the Assured.

Loss, if any,
payable to                                                    or order.

In the sum of PER SCHEDULE      Dollars

at and from the 6TH          day of FEBRUARY   , 2013, at 12:01AM LS time

until the 6HT           day of FEBRUARY   , 2014, at 12:01AM LS time

against the liabilities of the Assured as hereinafter described, and subject to the terms and conditions hereinafter set
forth, in respect of the vessel called the PER SCHEDULE OF VESSELS

(Tonnage            ) or by whatsoever other names the said vessel is or shall be named or called.

    In consideration of the Stipulations Herein Named and of PER SCHEDULE      Dollars, being Premium at the
rate of AGREED

    The Assuror hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss
and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay on account of
the liabilities, risks, events and/or happenings herein set forth:

Loss of Life,       (1)  Liability for loss of life of, or personal injury to, or illness of, any person, excluding,
injury and               however, unless otherwise agreed by endorsement hereon, liability under any
Illness                  Compensation Act to any employee of the Assured, (other than a seaman) or in case of
                         death to his beneficiaries or others.

                         Protection hereunder for loss of life or personal injury arising in connection with the handling
                         of cargo of the vessel named herein shall commence from the time of receipt by the Assured
                         of the cargo on dock or wharf or on craft alongside, the said vessel for loading thereon and
                         shall continue until delivery thereof from dock or wharf of discharge or until discharge from
                         the said vessel on to another vessel or craft.

Hospital, medical,  (2)  Liability for hospital, medical, or other expenses necessarily and reasonably incurred in
or other                 respect of loss of life of, personal injury to, or illness of any member of the crew of the
expenses                 vessel named herein or any other person. Liability hereunder shall also include burial
                         expenses not exceeding Two Hundred ($200) Dollars, when necessarily and reasonably
                         incurred by the Assured for the burial of any seaman of said vessel.

Repatriation        (3)  Liability for repatriation expenses of any member of the crew of the vessel named herein,
expenses                 necessarily and reasonably incurred, under statutory obligation, excepting such expenses as
                         arise out of or ensue from the termination of any agreement in accordance with the terms
                         thereof, or by mutual consent, or by sale of the said vessel, or by other act of the Assured.
                         Wages shall be included in such expenses when payable under statutory obligation, during
                         unemployment due to the wreck or loss of the said vessel.

Name of Insured       Policy Number ZOH-15N11069-13-ND       Effective Date 02/06/13
SUNCOAST SHIPPING, LLC                                  Processing Date 06/12/13  15:29  001

OMPI0001 Ed. 1-56
© 1956 The Travelers Indemnity Company. All rights reserved.              Page 1 of 7

| | |
|---|---|
| Damage to other vessel or property on board caused by collision | (4) Liability for loss of, or damage to, any other vessel or craft, or to the freight thereof, or property on such other vessel or craft, caused by collision with the vessel named herein, insofar as such liability would not be covered by full insurance under the **AI HULL CLAUSES (6/2/77) AI TUG FORM (53R-1)** (including the four-fourths running-down clause). |
| Principle of cross-liabilities to prevail | (a) Claims under this clause shall be settled on the principle of cross-liabilities to the same extent only as provided in the running-down clause above mentioned. |
| | (b) Claims under this clause shall be divided among the several classes of claims enumerated in this policy and each class shall be subject to the deduction and special conditions applicable in respect of such class. |
| | (c) Notwithstanding the foregoing, if any one or more of the various liabilities arising from such collision has been compromised, settled or adjusted without the written consent of the Assurer, the Assurer shall be relieved of liability for any and all claims under this clause. |
| Damage to other vessel or property on board not caused by collision | (5) Liability for loss of or damage to any other vessel or craft, or to a property on such other vessel or craft, not caused by collision, provided such liability does not arise by reason of a contract made by the assured. |
| | Where there would be a valid claim hereunder but for the fact that the damaged property belongs to the Assured, the Assurer shall be liable as if such damaged property belonged to another, but only for the excess over any amount recoverable under any other insurance application on the property. |
| Damage to docks, piers, etc. | (6) Liability for damage to any dock, pier, harbor, bridge, jetty, buoy, lighthouse, breakwater, structure, beacon, cable, or to any fixed or movable object or property whatsoever, except another vessel or craft, or property on another vessel or craft. |
| | Where there would be a valid claim hereunder but for the fact that the damaged property belongs to the Assured, the Assurer shall be liable as if such damaged property belonged to another, but only for the excess over any amount recoverable under any other insurance applicable on the property. |
| Removal of wreck | (7) Liability for cost or expenses of, or incidental to, the removal of the wreck of the vessel named herein when such removal is compulsory by law, provided, however, that: |
| | (a) There shall be deducted from such claim for cost or expenses, the value of any salvage from or which might have been recovered from the wreck, inuring, or which might have inured, to the benefit of the Assured. |
| | (b) The Assurer shall not be liable for such costs or expenses which would be covered by full insurance under the **AI HULL CLAUSES (6/2/77) AI TUG FORM** or claims arising out of hostilities or war-like operations, whether before or after declaration of war. |
| Cargo | (8) Liability for loss of, or damage to, or in connection with cargo or other property, excluding mail and parcel post, including baggage and personal effects of passengers, to be carried, carried, or which has been carried on board the vessel named herein; |
| | Provided, however, that no liability shall exist under this provision for: |
| Specie, bullion, precious stones, etc. | (a) Loss, damage or expense arising out of or in connection with the custody, care, carriage or delivery of specie, bullion, precious stones, precious metals, jewelry, silks, furs, bank notes, bonds or other negotiable documents or similar valuable property, unless specially agreed to and accepted for transportation under a form of contract approved, in writing, by the Assurer. |

© 1956 The Travelers Indemnity Company. All rights reserved.

Refrigeration
(b) Loss of, or damage to, or in connection with cargo requiring refrigeration unless the space, apparatus and means used for the care, custody, and carriage thereof have been surveyed by a classification surveyor or other competent disinterested surveyor under working conditions before the commencement of each voyage and found in all respects fit, and unless accepted for transportation under a form of contract approved, in writing, by the Assurer.

Passengers' effects
(c) Loss, damage, or expense in connection with any passenger's baggage or personal effects, unless the form of ticket issued to the passenger shall have been approved, in writing, by the Assurer.

Stowage in improper places
(d) Loss, damage, or expense arising from stowage of underdeck cargo on deck or stowage of cargo in spaces not suitable for its carriage, unless the Assured shall show that every reasonable precaution has been taken by him to prevent such improper stowage.

Deviation
(e) Loss, damage, or expense arising from any deviation, or proposed deviation, not authorized by the contract of affreightment, known to the Assured in time to insure specifically the liability therefor, unless notice thereof is given to the Assurer and the Assurer agrees, in writing, that such insurance is unnecessary.

Freight on cargo, short delivered
(f) Freight on cargo short delivered, whether or not prepaid or whether or not included in the claim and paid by the Assured.

Misdescription of Goods
(g) Loss, damage, or expense arising out of or as a result of the issuance of Bills of Lading which, to the knowledge of the Assured, improperly describe the goods or their containers as to condition or quantity.

Failure to surrender Bill of Lading
(h) Loss, damage, or expense arising out of delivery of cargo without surrender of Bill of Lading.

And provided further that

(aa) Liability hereunder shall in no event exceed that which would be imposed by law in the absence of contract.

Protective clauses required in contract of affreightment
(bb) Liability hereunder shall be limited to such as would exist if the Charter Party, Bill of Lading or Contract of Affreightment contained the following clause (in substitution for the clause commonly known as the Jason Clause):

"In the event of accident, danger, damage or disaster before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the shipowner is not responsible, by statute or contract or otherwise, the shippers, consignees or owners of the cargo shall contribute with the shipowner in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo,"

When cargo is carried by the vessel named herein under a bill of lading or similar document of title subject or made subject to the Carriage of Goods by Sea Act, April 16, 1936, liability hereunder shall be limited to such as is imposed by said Act, and if the Assured or the vessel named herein assumes any greater liability or obligation than the minimum liabilities and obligations imposed by said Act, such greater liability or obligation shall not be covered hereunder.

When cargo is carried by the vessel named herein under a charter party, bill of lading or contract of affreightment not subject or made subject to the Carriage of Goods by Sea Act, April 16, 1936, liability hereunder shall be limited to such as would exist if said charter party, bill of lading, or contract of affreightment contained the following clauses: a clause limiting the Assured's liability for total loss or damage to goods shipped to Two Hundred and Fifty ($250) Dollars per package, or in case of goods not shipped in packages, per customary freight unit, and providing for pro rata adjustment on such basis for partial loss or damage; a clause exempting the Assured and the vessel named herein from liability for losses arising from unseaworthiness, even though

Limit per package

© 1956 The Travelers Indemnity Company. All rights reserved.

existing at the beginning of the voyage, provided that due diligence shall have been exercised to make the vessel seaworthy and properly manned, equipped, and supplied; a clause providing that the carrier shall not be liable for claims in respect of cargo unless notice of claim is given within the time limited in such Bill of Lading and suit is brought thereon within the limited time prescribed therein; and such other protective clauses as are commonly in use in the particular trade; provided the incorporation of such clauses is not contrary to law.

The foregoing provisions as to the contents of the Bill of Lading and the limitation of the Assurer's liability may, however, be waived or altered by the Assurers on terms agreed, in writing.

**Assured's own cargo** (cc) Where cargo on board the vessel named herein is the property of the Assured, such cargo shall be deemed to be carried under a contract containing the protective clauses described in the preceding paragraph, and such cargo shall be deemed to be fully insured under the usual form of cargo policy, and in case of loss thereof or damage thereto the Assured shall be insured hereunder in respect of such loss or damage only to the extent that they would have been covered if said cargo had belonged to another, but only in the event and to the extent that the loss or damage would not be recoverable under a cargo policy as hereinbefore specified.

**Cotton Bills of Lading** (dd) The Assured's liability for claims under Custody Cotton Bills of Lading issued under the conditions laid down by the Liverpool Bill of Lading Conference Committee, is covered subject to previous notice of contract and payment of an extra premium of two (2) cents per ton gross register per voyage, but such additional premium shall be waived provided every bale is re-marked at a port of shipment on another portion of the bale.

**Land transportation not included** (ee) No liability shall exist hereunder for any loss, damage or expense in respect of cargo or other property being transported on land or on another vessel.

No liability shall exist hereunder for any loss, damage or expense in respect of cargo before loading on or after discharge from the vessel named herein caused by flood, time, windstorm, earthquake, fire, explosion, heat, cold, deterioration, collapse of wharf, leaky shed, theft or pilferage unless such loss, damage or expense is caused directly by the vessel named herein, her master, officers or crew.

**Customs, immigration or other fines or penalties** (9) Liability for fines and penalties, including expenses necessarily and reasonably incurred in avoiding or mitigating same, for the violation of any of the laws of the United States, or of any State thereof, or of any foreign country; provided, however, that the Assurer shall not be liable to indemnify the Assured against any such fines or penalties resulting directly or indirectly from the failure, neglect, or default of the Assured or his managing officers or managing agents to exercise the highest degree of diligence to prevent a violation of any such laws.

**Mutiny or other misconduct** (10) Expenses incurred in resisting any unfounded claim by the master or crew or other persons employed on the vessel named herein, or in prosecuting such persons in case of mutiny or other misconduct.

**Extraordinary expenses in case of quarantine, etc.** (11) Liability for extraordinary expenses resulting from outbreak of plague or other contagious disease, including such expenses incurred for disinfection of the vessel named herein or persons on board, or for quarantine, but excluding the ordinary expenses of loading and/or discharging, and the wages and provisions of crew and passengers; each claim under this provision is subject to a deduction of Two Hundred ($200) Dollars. It is provided further, however, that if the vessel named herein be ordered to proceed to a port when it is or should be known that calling there will subject the vessel to the extraordinary expenses above mentioned, or to quarantine or disinfection there or elsewhere, the Assurer shall be under no obligation to indemnify the Assured for any such expenses.

OMPI0001 Ed. 1-56
Page 4 of 7

© 1956 The Travelers Indemnity Company. All rights reserved.

**Deviation for purpose of landing injured**

(12) Net loss due to deviation incurred solely for the purpose of landing an injured or sick seaman in respect of port charges incurred, insurance, bunkers, stores, and provisions consumed as a result of the deviation.

**Cargo's proportion of general average**

(13) Liability for, or loss of, cargo's proportion of general average, including special charges, in so far as the Assured cannot recover same from any other source; subject however, to the exclusions of Section (8) and provided, that if the Charter Party, Bill of Lading or Contract of Affreightment does not contain the quoted clause under Section 8 (bb) the Assurer's liability hereunder shall be limited to such as would exist if such clause were contained therein.

**Costs and Charges**

(14) Costs, charges, and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the vessel named herein, subject to the agreed deductibles applicable, and subject further to the conditions and limitations hereinafter provided.

## GENERAL CONDITIONS AND/OR LIMITATIONS

**Prompt notice of claim**

Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Assurer is or may become liable, the Assured will use due diligence to give prompt notice thereof and forward to the Assurer as soon as practicable after receipt thereof, all communications, processes, pleadings and other legal papers or documents relating to such occurrences.

**Settlement of claims**

The Assured shall not make any admission of liability, either before or after any occurrence, which may result in a claim for which the Assurer may be liable. The Assured shall not interfere in any negotiations of the Assurer, for settlement of any legal proceedings, in respect of any occurrences for which the Assurer is liable under this policy; provided, however, that in respect of any occurrence likely to give rise to a claim under this policy, the Assured are obligated to and shall take steps to protect their (and/or the Assurer's) interests as would reasonably be taken in the absence of this or similar insurance. If the Assured shall fail or refuse to settle any claim as authorized by Assurer, the liability of the Assurer to the Assured shall be limited to the amount for which settlement could have been made.

**Assured to assist with evidence in defense, etc.**

Whenever required by the Assurer the Assured shall aid in securing information and evidence and in obtaining witnesses and shall cooperate with the Assurer in the defense of any claim or suit or in the appeal from any judgement, in respect of any occurrence, as hereinbefore provided.

**Law costs**

The Assurer shall not be liable for the cost or expense of prosecuting or defending any claim or suit unless the same shall have been incurred with the written consent of the Assurer, or the Assurer shall be satisfied that such approval could not have been obtained under the circumstances without unreasonable delay, or that such costs and charges were reasonably and properly incurred, such cost or expense being subject to the deductible. The cost and expense of prosecuting any claim in which the Assurer shall have an interest by subrogation or otherwise, shall be divided between the Assured and the Assurer, proportionately to the amounts which they would be entitled to receive respectively, if the suit should be successful.

The Assurer shall be liable for the excess where the amount deductible under this policy is exceeded by (A) the cost of investigating and/or successfully defending any claim or suit against the Assured based on a liability or an alleged liability of the Assured covered by this insurance, or (B) the amount paid by the Assured either under a judgement or an agreed settlement based on the liability covered herein including all costs, expenses of defense and taxable disbursements.

**Subrogation**

The Assurer shall be subrogated to all the rights which the Assured may have against any other person or entity, in respect of any payment made under this policy, to the extent of such

payment, and the Assured shall, upon the request of the Assurer, execute all documents necessary to secure to the Assurer such rights.

The Assurer shall be entitled to take credit for any profit accruing to the Assured by reason of any negligence or wrongful act of the Assured's servants or agents, up to the measure of their loss, or to recover for their own account from third parties any damage that may be provable by reason of such negligence or wrongful act.

**Cover elsewhere**

Provided that where the Assured is, irrespective of this insurance, covered or protected against any loss or claim which would otherwise have been paid by the Assurer, under this policy, there shall be no contribution by the Assurer on the basis of double insurance or otherwise.

**Assignments**

No claim or demand against the Assurer under this policy shall be assigned or transferred, and no person, excepting a legally appointed receiver of the property of the Assured, shall acquire any right against the Assurer by virtue of this insurance without the expressed consent of the Assurer.

**Actions against Assurers**

No action shall lie against the Assurer for the recovery of any loss sustained by the Assured unless such action is brought against the Assurer within one year after the final judgement or decree is entered in he litigation against the Assured, or in case the claim against the Assurer accrues without the entry of such final judgement or decree, unless such action is brought within one year from the date of the payment of such claim.

**Time limitation**

The Assurer shall not be liable for any claim not presented to the Assurer with proper proofs of loss within six (6) months after payment thereof by the Assured.

**Lay-up returns**

At the expiration of this policy, the Assurer is to return **NOT APPLICABLE**   for each thirty (30) consecutive days during the term of this insurance the vessel may be laid up in a safe port; or **NOT APPLICABLE**   for each thirty (30) consecutive days during the term of this insurance the vessel may be laid up in a safe port without loading and/or discharging and without crew or cargo on board, provided the Assured give written notice to the Assurer as soon as practicable after the commencement and the termination of such lay-up period.

<u>Cancellation provisions:</u>

(a) If the vessel named herein should be sold or requisitioned and this policy be cancelled and surrendered, the Assurer to return **NOT APPLICABLE**   for each thirty (30) consecutive days of the unexpired term of this insurance.

(b) In the event of non-payment of premium within sixty (60) days after attachment, this policy may be cancelled by the Assurer upon five (5) days' written notice being given the Assured.

(c) In the event that Sections 182 to 189, both inclusive, of U.S. Code, Title 46, or any other existing law or laws determining or limiting liability of shipowners and carriers, or any of them, shall, while this policy is in force, be modified, amended or repealed, or the liabilities of shipowners or carriers be increased, in any respect by legislative enactment, the Assurer shall have the right to cancel said insurance upon giving **N/A**   days' written notice of their intention so to do, and in the event of such cancellation, make return of premium upon a pro rata daily basis.

<u>Notwithstanding anything to the contrary contained in this policy, no liability attaches to the Assurer:</u>

For any loss, damage, or expense which would be payable under the terms of the **AI HULL CLAUSES (6/2/77)**   form of policy on hull and machinery, etc., if the vessel were fully covered by such insurance sufficient in amount to pay such loss, damage, or expense.

For any loss, damage or expense sustained by reason of capture, seizure, arrest, restraint or detainment, or the consequence thereof or of any attempt thereat; or sustained in consequence of military, naval or air action by force of arms, including mines and torpedoes or other missiles or engines of war, whether of enemy or friendly origin; or sustained in consequence of placing the

© 1956 The Travelers Indemnity Company. All rights reserved.

vessel in jeopardy as an act or measure of war taken in the actual process of a military engagement, including embarking or disembarking troops or material of war in the immediate zone of such engagement; and any such loss, damage and expense shall be excluded from this policy without regard to whether the Assured's liability therefor is based on negligence or otherwise, and whether before or after a declaration of war.

For any loss, damage, or expense arising from the cancellation or breach of any charter, bad debts, fraud of agents, insolvency, loss of freight hire or demurrage, or as a result of the breach of any undertaking to load any cargo, or in respect of the vessel named herein engaging in any unlawful trade or performing any unlawful act, with the knowledge of the Assured.

For any loss, damage, expense, or claim arising out of or having relation to the towage of any other vessel or craft, whether under agreement or not, unless such towage was to assist such other vessel or craft in distress to a port or place of safety, provided, however, that this clause shall not apply to claims under this policy for loss of life or personal injury to passengers and/or members of the crew of the vessel named herein arising as a result of towing.

For any claim for loss of life or personal injury in relation to the handling of cargo where such claim arises under a contract of indemnity between the Assured and his sub-contractor.

It is expressly understood and agreed if and when the Assured under this policy has any interest other than as a shipowner in the vessel or vessels named herein, in no event shall the Assurer be liable hereunder to any greater extent than if such Assured were the owner and were entitled to all the rights of limitation to which a shipowner is entitled.

Unless otherwise agreed by endorsement to this policy, liability hereunder shall in no event exceed that which would be imposed on the Assured by law in the absence of contract.

Liability hereunder in respect of any one accident or occurrence is limited to the amount hereby insured.

Attached to and forming part of Policy No. ZOH-15N11069-13-ND
of TRAVELERS PROPERTY CASUALTY CO. OF AMERICA

OMPI0001 Ed. 1-56
© 1956 The Travelers Indemnity Company. All rights reserved.                                    Page 7 of 7

AMERICAN INSTITUTE                                                                                   25
POLLUTION EXCLUSION CLAUSE (P&I)
AND BUY BACK ENDORSEMENT A

(JULY 4, 1976)

This Policy will not indemnify the Assured against any sum(s) paid, nor insure against any liability, with respect to any loss, damage, cost, liability, expense, fine or penalty of any kind or nature whatsoever, and whether statutory or otherwise, incurred by or imposed on the Assured, directly or indirectly, in consequence of, or with respect to, the actual or potential discharge, emission, spillage or leakage upon or into the seas, waters, land or air, of oil, petroleum products, chemicals or other substances of any kind or nature whatsoever.

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $INCLUDED          THE ABOVE POLLUTION EXCLUSION CLAUSE (P&I) SHALL NOT APPLY TO SUMS PAID, OR LIABILITY OF THE ASSURED:

1)    For loss of life of, or bodily injury to, or illness of, any person; or,

2)    For loss, damage or expense to any cargo or property carried on board the Insured Vessel(s); or,

3)    For loss, damage or expense to any cargo or property on board any other vessel or contained or stored ashore unless such sums are paid, or liability is imposed, as a result of contact of such cargo or property with oil, petroleum products, chemicals or other substances of any kind or nature whatsoever arising in consequence of their sudden and accidental discharge, emission, spillage or leakage upon or into the seas, waters, land or air; or

4)    For contamination of any cargo or property resulting from the pumping of oil, petroleum products, chemicals or any other substances of any kind or nature whatsoever directly into any other vessel, or between tanks of the Insured Vessel(s), or into storage tanks or receptacles ashore or elsewhere.

PROVIDED that such sums, or such liability, are insured elsewhere under the terms and conditions of this Policy.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/12/13  15:29  001 |

OMPI0101 Ed. 7-4-76
© 1976 The Travelers Indemnity Company, All rights reserved.                    Page 1 of 1

## CREW WARRANTY

In consideration of the premium charged, it is warranted that coverage hereunder is provided for not more than 5____ crew members on board the insured vessel(s) at any one time. In the event that additional crew are to be covered hereunder, the Insured shall give prior notice to this Company and pay such additional premium as required. If the Insured shall fail to give prior notice and at the time of loss in respects to crew there are more crew onboard, this insurance shall respond only in the proportion that the stated number of crew bears to the number on board at the time of the accident. Coverage herein provided excludes the vessel owner(s).

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
|---|---|---|
| SUNCOAST SHIPPING, LLC | | Processing Date 06/12/13  15:29  001 |

OMPI0111 Ed. 7-08
© 2008 The Travelers Indemnity Company. All rights reserved.                                        Page 1 of 1

Additional Assured/Loss Payee

---

With respect to Barge "Flag 4000", it is understood and agreed with effect from
February 6, 2013, Flag Container Services, Inc. is hereby added as an Additional
Assured and Loss Payee.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

---

Name of Insured          Policy Number ZOH-15N11069-13-ND          Effective Date 02/06/13
SUNCOAST SHIPPING, LLC                                  Processing Date 06/12/13  17:11  002

OMOH0500 Rev. 1-12                      Customized Form
© 2012 The Travelers Indemnity Company. All rights reserved.                    Page  1

© 2012 The Travelers Indemnity Company. All rights reserved.

3119502

B21
NEW YORK
SUITE 400
485 LEXINGTON AVE
NEW YORK NY 10017-2650

FRENKEL BENEFITS LLC
601 PLAZA 3 6TH FL
HARBORSIDE FINANCIAL CENTER
JERSEY CITY NJ 07311

## POLICY COVER SHEET

Job Name:  XP3310D*
File Number:  06170

Print Date and Time:  06/12/13   21:00

Business Center /
Original Business Unit:                   OCEAN MARINE

Policy Number:                            ZOH-15N11069-13-ND         CustAcct#7746412410

Name of Insured:                          SUNCOAST SHIPPING, LLC

Agency Number:                            3119502

Department or Expense Center:             001

Underwriter:                              1556295        Underwriting Team:

Data Entry Person:                        STORY,JUDITH

Date and Time:                            06/12/13   17:11   002
                                          Special Instructions


Policy Commencement Date: 02/06/13

THIS POLICY CONTAINS FORMS SELECTED THROUGH DOCUMENT SELECT

THE FOLLOWING SELECTED FORMS ARE NOT APPROVED ON THE FORMS STATUS TABLE
```
   FORM NBR   EDITION     CO    STATE    TRANS DATE
*  OMOH0500   01.12       98    FL       2013-02-06*
```

POLSR-1145

Case 2:14-cv-14360-DMM   Document 22-1   Entered on FLSD Docket 02/18/2015   Page 53 of 67

Case 2:14-cv-14360-XXXX   Document 1-3   Entered on FLSD Docket 09/05/2014   Page 55 of 69

Case 2:14-cv-14360-DMM   Document 22-1   Entered on FLSD Docket 02/18/2015   Page 54 of 67

Case 2:14-cv-14360-XXXX   Document 1-3   Entered on FLSD Docket 09/05/2014   Page 56 of 69

Additional Assured/Loss Payee

With respect to Barge "Flag 4000", it is understood and agreed with effect from February 6, 2013, Flag Container Services, Inc. is hereby added as an Additional Assured and Loss Payee.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

| Name of Insured | Policy Number ZOH-15N11069-13-ND | Effective Date 02/06/13 |
| SUNCOAST SHIPPING, LLC | | Processing Date 06/12/13  17:11  002 |

OMOH0500 Rev. 1-12                    Customized Form
© 2012 The Travelers Indemnity Company. All rights reserved.                    Page  1

© 2012 The Travelers Indemnity Company. All rights reserved.

**POLICY CHANGE ENDORSEMENT —
FOR CERTAIN TYPES OF CHANGES ONLY**

This endorsement summarizes certain changes
to your policy.  All other terms of your
policy not affected by these changes remain
the same.

**How Your Policy Is Changed** -
The following item(s):

| | |
|---|---|
| ☐ Insured's Name | ☒ Insured's Mailing Address |
| ☐ Policy Number | ☐ Company |
| ☐ Effective/Expiration Date | ☐ Insured's Legal Status/ Bus. of Insured |
| ☐ Payment Plan | ☐ Premium Determination |
| ☐ Additional Interested Parties | ☐ Coverage Forms and Endorsements |
| ☐ Limits/Exposures | ☐ Deductibles |
| ☐ Covered Property/Location Description | ☐ Classification/Class Codes |
| ☐ Rates | ☐ Underlying Insurance |

Is (are) changed to read:  (See also back page and additional page(s) if applicable)

It is understood and agreed the Insured's mailing address is amended to read as
follows:

1401 N US Highway 1
Fort Pierce, FL  34950

**Premium Change Which Is Due Now**

☐ No change        ☐ To be adjusted at audit
Additional premium  NOT APPLICABLE        Returned premium  NOT APPLICABLE

| | |
|---|---|
| If issued after the date your policy begins, these spaces must be completed and our representative must sign below.<br><br>Authorized representative | Policy issued to:<br>SUNCOAST SHIPPING, LLC<br><br>Endorsement takes effect:  02/06/13<br>Policy number:  Z0H-15N11069-13-ND<br>Processing date:  10/25/13  16:14  003 |

D0061 Ed. 11-98                               Policy Change Endorsement
© 1998 The Travelers Indemnity Company. All rights reserved.              Page   1

© 1998 The Travelers Indemnity Company. All rights reserved.

3119502

11727
NEW YORK
SUITE 400
485 LEXINGTON AVE
NEW YORK NY 10017-2630

ATTN- JOHN TOSCANI
FRENKEL BENEFITS LLC
601 PLAZA 3 6TH FL
HARBORSIDE FINANCIAL CENTER
JERSEY CITY NJ 07311

Case 2:14-cv-14360-DMM   Document 22-1   Entered on FLSD Docket 02/18/2015   Page 59 of 67

Case 2:14-cv-14360-XXXX   Document 1-3   Entered on FLSD Docket 09/05/2014   Page 61 of 69

## POLICY COVER SHEET

Job Name:  XP3321D
File Number:  06170

Print Date and Time:  10/25/13  21:22

Business Center /
Original Business Unit:         OCEAN MARINE

Policy Number:                  ZOH-15N11069-13-ND           CustAcct#7746412410

Name of Insured:                SUNCOAST SHIPPING, LLC

Agency Number:                  3119502

Department or Expense Center:   001

Underwriter:                    1556295         Underwriting Team:

Data Entry Person:              STORY,JUDITH

Date and Time:                  10/25/13  16:14  003
                                Special Instructions


Policy Commencement Date: 02/06/13

THIS POLICY CONTAINS FORMS SELECTED THROUGH DOCUMENT SELECT

THE FOLLOWING SELECTED FORMS ARE NOT APPROVED ON THE FORMS STATUS TABLE
   FORM NBR    EDITION      CO    STATE    TRANS DATE
*  D0061       11.98        98    FL       2013-02-06*

POLAR 11-85

**POLICY CHANGE ENDORSEMENT –**
**FOR CERTAIN TYPES OF CHANGES ONLY**

This endorsement summarizes certain changes
to your policy. All other terms of your
policy not affected by these changes remain
the same.

---

**How Your Policy Is Changed**
The following item(s):

| | |
|---|---|
| ☐ Insured's Name | ☒ Insured's Mailing Address |
| ☐ Policy Number | ☐ Company |
| ☐ Effective/Expiration Date | ☐ Insured's Legal Status/ Bus. of Insured |
| ☐ Payment Plan | ☐ Premium Determination |
| ☐ Additional Interested Parties | ☐ Coverage Forms and Endorsements |
| ☐ Limits/Exposures | ☐ Deductibles |
| ☐ Covered Property/Location Description | ☐ Classification/Class Codes |
| ☐ Rates | ☐ Underlying Insurance |

is (are) changed to read: (See also back page and additional page(s) if applicable)

It is understood and agreed the Insured's mailing address is amended to read as
follows:

1401 N US Highway 1
Fort Pierce, FL  34950

---

**Premium Change Which Is Due Now**

☐ No change     ☐ To be adjusted at audit

Additional premium  NOT APPLICABLE          Returned premium  NOT APPLICABLE

| | |
|---|---|
| If issued after the date your policy begins, these spaces must be completed and our representative must sign below. | Policy issued to: SUNCOAST SHIPPING, LLC |
| Authorized representative | Endorsement takes effect:  02/06/13 |
| | Policy number:  ZOH–15N11069–13–ND |
| | Processing date:  10/25/13  16:14  003 |

---

D0061 Ed. 11-98
© 1998 The Travelers Indemnity Company. All rights reserved.

Policy Change Endorsement

Page   1

Case 2:14-cv-14360-DMM   Document 22-1   Entered on FLSD Docket 02/18/2015   Page 61 of 67

Case 2:14-cv-14360-XXXX   Document 1-3   Entered on FLSD Docket 09/05/2014   Page 63 of 69

D0061 Ed. 11-98
Page    2

© 1998 The Travelers Indemnity Company. All rights reserved.

**POLICY CHANGE ENDORSEMENT**

This endorsement summarizes the changes to
your policy. All other terms of your policy
not affected by these changes remain the
same.

**How Your Policy Is Changed**

In consideration of a return premium of $24,008, it is understood and agreed
coverage is hereby cancelled in its entirety with effect from October 2, 2013.

RETURN PREMIUM CALCULATIONS

Hull
$47,500. x 127/365 = $16,527. Return Premium

P&I
$21,500. x 127/365 = $ 7,481. Return Premium

**Premium Change Which Is Due Now**

Additional premium  NOT APPLICABLE          Returned premium  $24,008.00

If issued after the date your policy          Policy issued to:
begins, these spaces must be completed        SUNCOAST SHIPPING, LLC
and our representative must sign below.

Authorized Representative

                                              Endorsement takes effect:  10/02/13
                                              Policy number:   ZOH-15N11069-13-ND
                                              Processing date:  11/03/13  12:44  004

40704 Ed. 5-84                                Endorsement
© 1984 The Travelers Indemnity Company. All rights reserved.                    Page   1

Case 2:14-cv-14360-DMM   Document 22-1   Entered on FLSD Docket 02/18/2015   Page 63 of 67

Case 2:14-cv-14360-XXXX   Document 1-3   Entered on FLSD Docket 09/05/2014   Page 65 of 69

40704 Ed. 5-84
Page   2

© 1984 The Travelers Indemnity Company. All rights reserved.

3119502

4605
NEW YORK
SUITE 400
485 LEXINGTON AVE
NEW YORK NY 10017-2630

ATTN- MATT ARCHIBALD
FRENKEL BENEFITS LLC
601 PLAZA 3  6TH FL
HARBORSIDE FINANCIAL  CENTER
JERSEY CITY NJ 07311

Case 2:14-cv-14360-DMM   Document 22-1   Entered on FLSD Docket 02/18/2015   Page 65 of 67

Case 2:14-cv-14360-XXXX   Document 1-3   Entered on FLSD Docket 09/05/2014   Page 67 of 69

**POLICY COVER SHEET**

Job Name: XP3321D                     Print Date and Time: 11/04/13  21:16
File Number: 06170

Business Center /
Original Business Unit:        OCEAN MARINE

Policy Number:                 2OH-15N11069-13-ND          CustAcct#7746412410

Name of Insured:               SUNCOAST SHIPPING, LLC

Agency Number:                 3119502

Department or Expense Center:  001

Underwriter:                       1556295      Underwriting Team:

Data Entry Person:             STORY,JUDITH

Date and Time:                 11/03/13  12:44  004
                               **Special Instructions**


Policy Commencement Date: 02/06/13

THIS POLICY CONTAINS FORMS SELECTED THROUGH DOCUMENT SELECT

THE FOLLOWING SELECTED FORMS ARE NOT APPROVED ON THE FORMS STATUS TABLE
  FORM NBR   EDITION   CO   STATE   TRANS DATE
* 40704      05.84     98    FL     2013-10-02*

POLSR 11-85

Case 2:14-cv-14360-DMM   Document 22-1   Entered on FLSD Docket 02/18/2015   Page 66 of 67

Case 2:14-cv-14360-XXXX   Document 1-3   Entered on FLSD Docket 09/05/2014   Page 68 of 69

## POLICY CHANGE ENDORSEMENT

This endorsement summarizes the changes to your policy. All other terms of your policy not affected by these changes remain the same.

### How Your Policy Is Changed

In consideration of a return premium of $24,008, it is understood and agreed coverage is hereby cancelled in its entirety with effect from October 2, 2013.

RETURN PREMIUM CALCULATIONS

Hull
$47,500. x 127/365 = $16,527. Return Premium

P&I
$21,500. x 127/365 = $ 7,481. Return Premium

### Premium Change Which Is Due Now

Additional premium  NOT APPLICABLE          Returned premium  $24,008.00

If issued after the date your policy begins, these spaces must be completed and our representative must sign below.

Policy issued to:
SUNCOAST SHIPPING, LLC

Authorized Representative

Endorsement takes effect:  10/02/13
Policy number:  ZOB-15N11069-13-ND
Processing date:  11/03/13  12:44  004

40704 Ed. 5-84                              Endorsement                        Page   1
© 1984 The Travelers Indemnity Company. All rights reserved.

© 1984 The Travelers Indemnity Company. All rights reserved.